**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLORADO**

ALEX FONTENOT and MYA HOLLINGSHED, Individually and on Behalf of All Those Similarly Situated,

Plaintiffs,

vs.

NATIONAL COLLEGIATE ATHLETIC ASSOCIATION; SOUTHEASTERN CONFERENCE; PAC-12 CONFERENCE; THE BIG TEN CONFERENCE, INC.; THE BIG TWELVE CONFERENCE, INC.; and ATLANTIC COAST CONFERENCE;

Defendants.

CASE NO. 1:23-CV-03076-CNS-STV

**Opposition to Defendants' Motion to Stay Proceedings**

## INTRODUCTION

Defendants have conspired for years to deprive student-athletes—the bedrock of college sports—of fair, market-driven compensation for their services. And each year, Defendants have raked in billions of dollars in revenue generated by those same college athletes. This case seeks to end that harm.

Defendants have moved to stay this case until the resolution of a motion to transfer now pending before the Judicial Panel on Multidistrict Litigation ("JPML"). Neither Defendants nor Plaintiffs in this case filed that motion to transfer. Instead, another set of plaintiffs represented by different legal counsel in a second-filed action made it, asking that this case—the first on file—should be transferred to the Northern District of California, simply because they chose to file a second case there.

The Court should deny the motion to stay and allow certain proceedings to take place, including limited written discovery and motion-to-dismiss briefing that must inevitably take place. Defendants argue that courts in this District always grant motions to stay while the JPML considers consolidation, but that is not actually correct. Courts here and around the country have either fully denied or partially denied such stay motions. *See, e.g.*, *Carolus v. Gen. Elec. Co.*, No. CIVA07CV00714-WYDMJW, 2007 WL 4225802, at *2 (D. Colo. Nov. 28, 2007) (partially denying motion to stay to allow discovery to proceed); *Wishon v. Monsanto Co.*, No. CIV-13-770-M, 2013 WL 5596319, at *2 (W.D. Okla. Oct. 11, 2013) (allowing briefing on motion to dismiss to proceed); *Blackmore v. Smitty's Supply, Inc.*, 451 F. Supp. 3d 1003, 1004 (N.D. Iowa 2020); *Doe as next friend of Doe 1 v. Varsity Brands, LLC*, No. 222CV02657JTFTMP, 2023 WL 3090041, at *4 (W.D. Tenn. Apr. 25, 2023); *Smokey Alley Farm P'ship v. Monsanto Co.*,

No. 4:17 CV 2031 JMB, 2018 WL 278624, at *4 (E.D. Mo. Jan. 3, 2018); *Garrison v. Stephan*, No. 223CV01138JADBNW, 2023 WL 5207624, at *2 (D. Nev. Aug. 11, 2023).

Defendants bear the burden of "mak[ing] out a clear case of hardship or inequity" before a stay is warranted. *Landis v. N. Am. Co.*, 299 U.S. 248, 255 (1936). They have not shown any hardship or inequity. There can be no hardship in completing tasks that must be completed anyway, such as engaging in limited written discovery regarding Defendants' policies and committee memberships, working on an ESI protocol, and briefing any motion to dismiss. And there is no risk of inconsistent rulings or wasted judicial resources because Plaintiffs will not oppose postponing the hearing on the dismissal motion until after the JPML rules on the transfer motion.

The low likelihood of the JPML granting transfer provides further reason to deny the stay. The JPML usually denies motions to transfer when only two cases are on file. *See infra* at 11-12 (citing cases). As a result, there is a strong likelihood this case will be proceeding here, in the venue of the first-filed case.

As a professional courtesy, Plaintiffs have agreed to four consecutive continuances. Without those continuances, Defendants already would have responded to the complaint. Instead, the case has been stuck in the starting blocks, and Defendants are now asking for an additional, complete stay. While Defendants' predict that the JPML will quickly decide the transfer motion quickly, the JPML has not yet scheduled a date for hearing the transfer motion, and the first possible date is not until March 28.

The months that will be consumed by JPML proceedings is time that should be spent moving the case forward by performing tasks that the parties will need to perform

wherever the case ends up. There is no reason to delay the inevitable. The Court should deny the motion to stay and allow the case to finally get out of the starting gate.

## BACKGROUND

Plaintiff Alex Fontenot filed his original complaint in this Court on November 20, 2023, alleging that Defendants unlawfully colluded to limit the compensation available to member schools' athletes in violation of the Sherman Act. ECF No. 1. Mr. Fontenot, who is a resident of Colorado,worked as a college football player at the University of Colorado from 2017 to 2022. *Id.* ¶ 23. Mr. Fontenot played running back, rushing for 874 yards and five touchdowns as a starter in his sophomore season. *Id.* ¶ 113. That placed him on preseason watch lists for an award for the country's for best running back in 2021 and 2022. *Id.* ¶ 114.

In a recent amended complaint, Mya Hollingshed joined the case as a named plaintiff. ECF No. 78. Ms. Hollingshed, also a resident of Colorado, starred as a college basketball player at the University of Colorado from 2017 to 2022. *Id.* ¶ 24. In 2022, she led Colorado to its first NCAA Tournament appearance since 2013, finishing her career ranked sixth on Colorado's all-time scoring and rebounding lists. *Id.* ¶ 123.

Mr. Fontenot and Ms. Hollingshed allege that Defendants engaged in wage fixing by capping their compensation at artificial levels. *Id.* ¶¶ 130-31. Defendants' member schools compete for talented athletes, but their bylaws illegally limit the types and amount of compensation that schools can provided these talented athletes—all while Defendants and their member schools rake in billions of dollars in revenue each year. Plaintiffs allege that, but for Defendants' anticompetitive restrictions, athletes like Mr. Fontenot and Ms. Hollingshed "would have received a competitive share of the

television and other revenue being brought in by Defendants and their member schools." *Id.* ¶¶ 119, 127.

Defendants' agreement to restrain trade in the college athlete labor market violates the Sherman Act. *Id.* ¶¶ 129-31.Plaintiffs seek treble damages, fees, costs, and an injunction prohibiting Defendants from continuing these unlawful practices. They seek to represent a class of similarly situated college athletes, including: "All persons who worked as athletes for a Division I athletic team at an NCAA Division I school, from the beginning of the statute of limitations period, as determined by the Court, through judgment in this matter." *Id.* ¶ 36.

On December 7, 2023 (17 days after Mr. Fontenot brought his case), a different plaintiffs represented by different lawyers filed a proposed antitrust class action in the Northern District of California on behalf of college athletes against the same Defendants named here. *Carter et al. v. Nat'l Collegiate Athletic Ass'n et al.*, No. 3:23-cv-06325-RS (ND. Cal. Dec. 7, 2023), ECF No. 1 (the "*Carter*" case). And like this case, the complaint filed in *Carter* claims that Defendants' rules illegally prevent college athletes from receiving "market-value compensation" in violation of the Sherman Act. *Id.* ¶ 1. The class claims in *Carter* are narrower than those brought in this case because the proposed damages class is limited to only those athletes who competed on a Power Five Conference or Notre Dame basketball or football team during the statute of limitations period—a limited subset of schools and a very limited subset of all sports. *Id.* ¶ 174. So all *Carter* claims are subsumed by this case.

On January 16, 2024, the *Carter* plaintiffs asked the JPML to consolidate the cases in the Northern District of California rather than this Court, even though this case

was filed first. They did so without any advance notice to counsel in this case, bypassing normal transfer motions, and did so despite the existence of only two overlapping actions.

Defendants' response to Plaintiffs' complaint in this case was originally due on January 29, 2024. At Defendants' request, Plaintiffs agreed to a 21-day extension of that deadline, making the responses due on February 19. ECF No. 67. A status conference was originally set for January 30 in this action, but at Defendants' request, Plaintiffs agreed to continue the scheduling conference until February 15. ECF No. 42. After filing their motion to stay, Defendants requested to continue the status conference during the pendency of that motion, which Plaintiffs again agreed to. ECF No. 72. Defendants then requested further time to respond to the complaint during the pendency of this motion, which Plaintiffs reluctantly agreed to. Thus, Defendants have already requested and received four continuances in this case, halting progress that could already have been made.

## ARGUMENT

### I. The Court Has Discretion to Deny the Motion to Stay, Which Is Not Automatic.

By its very nature, a "stay is an intrusion into the ordinary processes of administration and judicial review." *Nken v. Holder*, 556 U.S. 418, 427 (2009) (internal quotations omitted). It is thus the moving party's burden to "make out a clear case of hardship or inequity" and show that a stay is necessary. *Landis v. N. Am. Co.*, 299 U.S. 248, 255 (1936); *see also Nken*, 556 U.S. at 433-34 ("The party requesting a stay bears the burden of showing that the circumstances justify an exercise of that discretion.").

"The court's inherent power to stay proceedings is discretionary and is derivative of the court's power to manage cases to ensure just, efficient adjudication." *Carolus v. Gen. Elec. Co.*, No. CIVA07CV00714-WYDMJW, 2007 WL 4225802, at *1 (D. Colo. Nov. 28, 2007) (denying in part motion to stay).

The MDL rules do not mandate a stay of proceedings pending resolution of a JPML motion to consolidate. *See* 29 U.S.C. § 1407; JPML Rule of Procedure 2.1(d). And courts "should not automatically stay" proceedings under such circumstances. Ann. Manual Complex Lit. § 20.131 (4th ed.); *Blackmore v. Smitty's Supply, Inc.*, 451 F. Supp. 3d 1003, 1004 (N.D. Iowa 2020) ("[A] district judge should not automatically stay discovery, postpone rulings on pending motions, or generally suspend further rulings upon a parties' motion to the MDL Panel for transfer and consolidation." (quoting *Rivers v. Walt Disney Co.*, 980 F. Supp. 1358, 1360 (C.D. Cal. 1997)). While courts have used different factors when assessing such a stay motion, courts generally focus on "(1) potential prejudice to the non-moving party; (2) hardship and inequity to the moving party if the action is not stayed; and (3) the judicial resources that would be saved by avoiding duplicative litigation." *Carolus*, 2007 WL 4225802, at *1.

Courts (including in this District) have either fully or partially denied motions to stay under circumstances like those presented here. *See, e.g.*, *Carolus*, 2007 WL 4225802, at *2 (partially denying motion to stay); *Wishon v. Monsanto Co.*, No. CIV-13-770-M, 2013 WL 5596319, at *2 (W.D. Okla. Oct. 11, 2013) (allowing briefing on motion to dismiss to proceed). Defendants argue (at 3) that "courts in the District of Colorado have unanimously" stayed actions pending a JPML decision, but that is wrong. Judge Watanabe in *Carolus* held otherwise, as have other courts in the Tenth Circuit and

across the country. *See id.*; *see also, e.g.*, *Blackmore*, 451 F. Supp. 3d at 1009; *Doe as next friend of Doe 1 v. Varsity Brands, LLC*, No. 222CV02657JTFTMP, 2023 WL 3090041, at *4 (W.D. Tenn. Apr. 25, 2023); *Smokey Alley Farm P'ship v. Monsanto Co.*, No. 4:17 CV 2031 JMB, 2018 WL 278624, at *4 (E.D. Mo. Jan. 3, 2018); *Garrison v. Stephan*, No. 223CV01138JADBNW, 2023 WL 5207624, at *2 (D. Nev. Aug. 11, 2023). This Court should likewise deny the motion to allow limited proceedings to take place—and to prevent another two months from being wasted.

## II. To Avoid Prejudice, the Parties Should Proceed with Limited Written Discovery and Briefing on the Motion to Dismiss, Which Will Need to Be Done Anyway.

Plaintiffs complain of a practice that has harmed athletes for decades, and that continues to harm athletes today. Even in the wake of the Supreme Court's *NCAA v. Alston* decision, 594 U.S. __, 141 S. Ct. 2141 (2021), Defendants have continued to enforce a bylaw that, by its express terms, prohibits talented and hard-working athletes from being paid what the market would otherwise demand. That is antithetical not only to antitrust law but to our free-market system, and it needs to be corrected in short order. Many athletes in the proposed class need this money, and any delay in their ability to seek it will inevitably cause hardship. Bills and expenses do not cease while the JPML considers a motion to consolidate, and neither should progress on this case.

There is also the very real possibility for specific, identifiable prejudice resulting from delay because one of the Defendants, the Pac-12 Conference, is on the verge of collapsing. Most of its members have bolted for other conferences in the name of chasing more dollars (while agreeing to not pay the athletes their fair share of these

increasing dollars). *See* ECF No. 78 ¶ 65. Just two members remain in the Pac-12 Conference: Oregon State and Washington State. The conference's continued viability is highly in doubt. Under such circumstances, any delay could prejudice Plaintiffs' ability to gain needed evidence and to ensure that any judgment could be enforced and collected against this Defendant.

Defendants argue (at 5) that no responsive pleadings have been filed and no scheduling conference has taken place yet, but that is only because Defendants have already requested four continuances in the case. Plaintiffs reluctantly agreed to those continuances as a professional courtesy, but the continuances have stalled progress. Absent those continuances, a scheduling conference would have occurred and responsive pleadings would have been filed.

To prevent the possibility of prejudice and irreparable harm, the parties should at least proceed with limited written discovery and briefing on the motion to dismiss or any § 1404(a) briefing during the pendency of the JPML proceedings. Written discovery tailored to Defendants' policies and committee memberships will be needed wherever the litigation takes place, and it will move the case along by allowing the parties to identify possible custodians. *See Carolus*, 2007 WL 4225802, at *2 ("The court further finds that judicial economy would not be served by waiting until a decision is made by the MDL Panel since the written discovery in this case will take many months to complete and such written discovery will be necessary even if the MDL Panel grants Plaintiffs' pending motion for MDL Treatment, noting that it may take months before the MDL Panel takes action on the Plaintiffs' pending motion for MDL Treatment.").

Along the same lines, the parties can begin working on an ESI protocol, which will likewise need to be done.

The motion-to-dismiss briefing can also move forward. That was the path taken in *Wishon*, 2013 WL 5596319, at *2. There, the non-moving party pointed out that a "transfer will not change the applicable law or any of the issues presented in defendant's motion" to dismiss. *Id.* And no judicial resources would be expended: if the JPML granted the transfer motion, the briefing could simply be transferred to the other court, and if the JPML denied transfer, the motion to dismiss would be fully briefed and ready for resolution. *Id.* The court agreed, holding that "Defendant's motion to dismiss will need to be fully briefed whether this case is transferred or not." *Id.*; *see also Varsity Brands, LLC*, 2023 WL 3090041, at *4 (allowing motion to dismiss briefing to proceed because "the risk of conflicting rulings or wasted judicial resources is low given the tight time scale"); *Smokey Alley Farm P'ship*, 2018 WL 278624, at *1 (allowing motion to dismiss briefing to proceed because "regardless of the JPML's decision, the motions to dismiss will need to be briefed").

Here too, no hardship to any party can occur from proceeding with briefing on the motion to dismiss that Defendants have indicated they intend to file (along with any related motions). Both this case and *Carter* involve claims under just a single antitrust law. Regardless of where the litigation proceeds, the parties will be arguing about the application of the Supreme Court's *Alston* decision to the case. They will be citing cases involving the NCAA and its members that have since interpreted *Alston*—including the Northern District of West Virginia's recent decision to enjoin Defendants from continuing to enforce a rule aimed at limiting the ability of these athletes to transfer among schools.

*State v. Nat'l Collegiate Athletic Ass'n*, No. 1:23-CV-100, 2023 WL 9103711, at *13 (N.D.W. Va. Dec. 13, 2023) (granting temporary restraining order). Defendants will likely argue that they would have to change some of their cases if the case is transferred to another district, but the impact would likely be minimal in this case because the relevant cases involving the NCAA (which the parties will be debating) will not change even if the venue changes. Moreover, this case is not only the first on file, but its proposed class is broader than that proposed in the second-filed *Carter* case, meaning *Carter*'s claims are subsumed by this case.

Nor will proceeding in this limited fashion waste any judicial resources. Proceeding with limited, non-controversial written discovery will require no court intervention. And any hearing on the motion to dismiss can be delayed until after the JPML issues its order. If briefing on the motion to dismiss begins by the end of February, the parties should be able to fully complete the dismissal briefing by the time of the JPML's decision. If the JPML denies the transfer motion, the parties will be ready for oral argument on the motion to dismiss at the Court's earliest availability if the Court deems it necessary. If the JPML grants the transfer motion, the motion can be transferred to the transferee court for resolution. Either way, no judicial resources will be required until after the JPML's decision.

Likewise, there is no chance of inconsistent pretrial rulings because the Court will not be asked to decide the motions until after the JPML rules. Defendants complain (at 5) of the possibility of "redundant discovery burdens," but Plaintiffs will agree to tightly focus their discovery requests on non-controversial items, like Defendants' policies and

committee memberships, until after the JPML rules. There is no risk of redundancy because those items will be needed anyway.

And while Defendants argue (at 7) that the public interest is served by staying the action, Rule of Civil Procedure 1 says otherwise by calling for the "just, speedy, and inexpensive determination of every action." Nearly three months have already expired without any discovery or responsive pleadings, and idling it for another two months is simply not in the public interest.

The balance of factors therefore favor proceeding in this limited fashion. Plaintiffs have an interest in proceeding expeditiously with their case. Athletes across the country are impacted every day, and former athletes continue to be deprived of years of fair pay. The potential prejudice is real, and it is compounded by a Defendant on the verge of collapse. In contrast, there can be no hardship in proceeding with limited written discovery and motion-to-dismiss and related briefing, which will not consume any Court resources until after the JPML rules.

## III. The JPML Transfer Motion Has a Relatively Low Likelihood of Success.

The Court should also take comfort in proceeding at least in a limited fashion because the JPML transfer motion has a relatively low likelihood of success. *See Blackmore*, 451 F. Supp. 3d at 1007 (assessing strength of JPML motion when denying stay request). While some courts avoid trying to handicap the JPML proceedings, courts routinely look at the likelihood of success in similar contexts, such as when deciding whether to stay a ruling pending an appeal. *See Nken*, 556 U.S. at 434.

Currently, there are only two cases subject to the JPML transfer motion. When transfer is contested, the JPML often denies transfer where so few cases are involved.

*See, e.g.*, *In re U.S. Postal Services Next Generation Delivery Vehicle Acquisitions Program Record of Decision Litig.*, 2022 WL 5408780 (U.S.J.P.M.L. 2022) (denying transfer where just three actions were pending); *In re Senior Health Ins. Co. of Pa. Rehab. Plan Litig.*, 2022 WL 2129057 (U.S.J.P.M.L. 2022) (denying transfer of litigation involving 3 actions); *In re Harvest Entities Fair Labor Standards Act and Wage and Hour Litig.*, 584 F. Supp. 3d 1380 (U.S.J.P.M.L. 2022) (denying defendants' motion to centralize four actions alleging violation of federal and state labor law for failure to meet burden to show centralization would be appropriate); *In re National Rifle Ass'n Bus. Expenditures Litig.*, 521 F. Supp. 3d 1353 (U.S.J.P.M.L. 2021) (denying transfer of four actions where proponents did not demonstrate any attempt at informal coordination or transfer via other means before seeking centralization); *In re Dickey's Barbecue Rests., Inc., Customer Data Sec. Breach Litig.*, 521 F. Supp. 3d 1355 (U.S.J.P.M.L. 2021) (denying transfer where there were only six actions including three related actions*); In re GEICO Customer Data Security Breach Litig.*, 2021 WL 4704797 (U.S.J.P.M.L. 2021) ("Where only a minimal number of actions is involved, the proponent of centralization bears a heavier burden to demonstrate that centralization is appropriate."); *In re New York Area Employee Ret. Income Sec. Act and Employment Practices Litig.*, 2021 WL 3520621 (U.S.J.P.M.L. 2021); *In re Charles Hayes False Imprisonment Litig.*, 543 F. Supp. 3d 1371 (U.S.J.P.M.L. 2021).

That is partly because the JPML views regular transfer motions—such as those brought under the first-to-file rule and § 1404(a)—as preferable to MDL proceedings. *See In re: Gerber Probiotic Prod. Mktg. & Sales Pracs. Litig.*, 899 F. Supp. 2d 1378, 1380 (U.S.J.P.M.L. 2012) ("Consequently, where a reasonable prospect exists that

resolution of Section 1404 motions could eliminate the multidistrict character of a litigation, transfer under Section 1404 is preferable to centralization."). "[C]entralization under Section 1407 should be the last solution after considered review of all other options." *In re Capacitors Antitrust Litig. (No. II)*, 223 F. Supp. 3d 1340, 1342 (U.S.J.P.M.L. 2016). To date, neither this Court nor the court where *Carter* is pending have entertained any venue-related motions because the *Carter* plaintiffs moved for MDL consolidation before venue-related motions were filed. Defendants' position on consolidation remains unknown, but to the extent Defendants believe that the two cases should be consolidated or transferred, they should make a motion under the normal transfer procedures of first-to-file and § 1404(a), which would give this Court or the *Carter* court a chance to resolve such motions without the need for JPML intervention.

Because this case was first on file, Plaintiffs strongly believe that the litigation should continue in this Court. *See Kohn Law Grp., Inc. v. Auto Parts Mfg. Mississippi, Inc.*, 787 F.3d 1237, 1240 (9th Cir. 2015) (discussing the first-to-file rule). That would be far more convenient for Plaintiffs, who are Colorado residents, and would honor their choice of forum. The case should proceed where it was first brought.

**CONCLUSION**

Defendants fall short of satisfying their burden of demonstrating a "clear case of hardship or inequity" and that a stay is necessary. Proceeding in a limited fashion will prevent prejudice to Plaintiffs while imposing zero hardship on Defendants and consuming no judicial resources. Plaintiffs respectfully request that the Court deny the motion so that limited written discovery and briefing on the motion to dismiss and related motions (such as venue-related motions) can proceed.

DATED: February 5, 2024

By: /s/ *Garrett R. Broshuis*
STEPHEN M. TILLERY (admission forthcoming)
stillery@koreintillery.com
GARRETT R. BROSHUIS
gbroshuis@koreintillery.com
CAROL O'KEEFE
cokeefe@koreintillery.com
**KOREIN TILLERY, LLC**
505 North 7th Street, Suite 3600
St. Louis, MO 63101
Telephone: (314) 241-4844
Facsimile: (314) 241-3525

GEORGE A. ZELCS
gzelcs@koreintillery.com
MARC A. WALLENSTEIN
mwallenstein@koreintillery.com
**KOREIN TILLERY, LLC**
205 N. Michigan Ave., Suite 1950
Chicago, IL 60601
Telephone: (312) 641-9750

CHRISTOPHER M. BURKE (admission forthcoming)
cburke@koreintillery.com
**KOREIN TILLERY, LLC**
707 Broadway, Suite 1410
San Diego, CA 92101
Telephone: (619) 625-5620

SEAN GRIMSLEY
sgrimsley@olsongrimsley.com
ERIC OLSON
eolson@olsongrimsley.com
JASON MURRAY
jmurray@olsongrimsley.com
ABIGAIL HINCHCLIFF
ahinchcliff@olsongrimsley.com
**OLSON GRIMSLEY KAWANABE HINCHCLIFF & MURRAY LLC**
700 17th Street, Suite 1600
Denver, CO 80202
Telephone: (303) 535-9151

*Attorneys for Plaintiff*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 5th day of February, 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all attorneys of record registered for electronic filing.

/s/ *Garrett R. Broshuis*
Garrett R. Broshuis