UNITED STATES JUDICIAL PANEL
on
MULTIDISTRICT LITIGATION


IN RE: COLLEGE ATHLETE COMPENSATION
ANTITRUST LITIGATION                                                                MDL No. 3105


ORDER DENYING TRANSFER


**Before the Panel**:*  Plaintiffs in the Northern District of California *Carter* action move under 28 U.S.C. § 1407 to centralize this litigation in the Northern District of California. This litigation consists of two actions, one pending in the District of Colorado and one pending in the Northern District of California, as listed on Schedule A.  Defendants support centralization in the Northern District of California.  Plaintiffs in the District of Colorado *Fontenot* action oppose centralization and, alternatively, suggest the District of Colorado as the transferee forum.  The parties have noticed four related actions, though they dispute whether they are, in fact, related to the actions on the motion.

This is the third motion to come before us seeking centralization of litigation against the National Collegiate Athletic Association (NCAA) challenging its amateurism model of college athletics.  *See In re Student-Athlete Name & Likeness Litig.*, 763 F. Supp. 2d 1379 (J.P.M.L. 2011) (denying centralization of *O'Bannon* and similar actions challenging restrictions on student-athletes receiving compensation for use of their names, images, and likenesses (NIL)); *In re Nat'l Collegiate Athletic Ass'n Athletic Grant-in-Aid Cap Antitrust Litig.*, 24 F. Supp. 3d 1366 (J.P.M.L. 2014) (centralizing *Alston* and other actions challenging NCAA rules capping athletic grants-in-aid (*i.e.*, scholarships)).  The actions on this motion take direct aim at the NCAA's prohibition on student-athletes receiving compensation from the NCAA, athletic conferences, or their schools for their athletic services.  Plaintiffs in each action name the NCAA and the largest athletic conferences (the Atlantic Coast Conference, The Big Ten Conference, Inc., The Big 12 Conference, Inc., the Pac-12 Conference; and the Southeastern Conference, which collectively are referred to as the Power 5 Conferences).  Plaintiffs allege that, but for defendants' restrictions on student-athlete compensation, they would have received a share of the substantial television and other revenues defendants receive from college athletics (in particular, college basketball and football).

On the basis of the papers filed and the hearing session held, we conclude that centralization is not necessary for the convenience of the parties and witnesses or to further the just and efficient conduct of the litigation.  There is no dispute that these actions involve common questions of fact arising from allegations that the NCAA and the Power 5 Conferences violate the Sherman Act by prohibiting student-athletes from receiving compensation for their athletic services.  The

---

* Judge Nathaniel M. Gorton did not participate in the decision of this matter.

- 2 -

complaints identify the same alleged relevant market for the labor of Division I college athletes and propose overlapping nationwide classes. Even so, we have emphasized that "centralization under Section 1407 should be the last solution after considered review of all other options." *In re Best Buy Co., Inc., Cal. Song-Beverly Credit Card Act Litig.*, 804 F. Supp. 2d 1376, 1378 (J.P.M.L. 2011). These options include agreeing to proceed in a single forum via Section 1404 transfer of the cases, as well as voluntary cooperation and coordination among the parties and the involved courts to avoid duplicative discovery or inconsistent rulings. *See, e.g.*, *In re Gerber Probiotic Prods. Mktg. & Sales Pracs. Litig.*, 899 F. Supp. 2d 1378, 1379–80 (J.P.M.L. 2012); *In re Eli Lilly & Co. (Cephalexin Monohydrate) Pat. Litig.*, 446 F. Supp. 242, 244 (J.P.M.L. 1978); *see also* Manual for Complex Litigation, Fourth, § 20.14 (2004).

There are only two actions on this motion, and the related actions identified by the parties differ from the actions on the motion in important ways.[1] Where only a minimal number of actions are involved, the proponent of centralization bears a heavier burden to demonstrate that centralization is appropriate. *See In re Transocean Ltd. Sec. Litig. (No. II)*, 753 F. Supp. 2d 1373, 1374 (J.P.M.L. 2010). Movants have not met this burden here. The *Fontenot* plaintiffs have moved to intervene in the *Carter* action to seek transfer of that action to Colorado under the first-to-file rule. Defendants also suggest in their briefing that, should centralization be denied, they may move to transfer *Fontenot* to the Northern District of California. Thus, there appears to be some prospect that Section 1404 transfer could eliminate the multidistrict character of this litigation. *See Gerber*, 899 F. Supp. 2d at 1380–81. And even if neither of the actions is transferred, informal coordination and cooperation among the involved parties and courts appear quite feasible given the small number of involved actions, parties, and counsel.

Moreover, the actions on the motion seek a share of the television broadcast proceeds received by defendants, primarily for college football and basketball. The Northern District of California *House* action, which defendants noticed as a related action, likewise seeks a share of these proceeds, albeit in the form of damages for lost NIL opportunities. Discovery in *House* is complete, classes have been certified, and trial is set for January 2025. Resolution of the *House* action may well drive resolution of the actions on the motion, minimizing the need for Section 1407 centralization. Accordingly, we are not persuaded that centralization is needed here.

---

[1] For instance, while the actions on the motion are brought by current or former Division I student-athletes, the Northern District of Illinois *Bewley* action is brought by two prospective Division I student-athletes deemed ineligible to compete in college athletics because they allegedly were compensated for their athletic services during high school. The court in *Bewley* denied a motion for preliminary injunction in significant part based on this distinction. *See Bewley v. Nat'l Collegiate Athletic Ass'n*, C.A. No. 1:23-15570, 2024 WL 113971 (N.D. Ill. Jan. 10, 2024). Similarly, the Middle District of North Carolina *Brantmeier* action is brought on behalf of a putative class of student-athletes who compete in "non-revenue individual sports" and challenges an NCAA prohibition on such athletes accepting prize money earned in non-NCAA competitions. *See* Compl. ¶ 1, *Brantmeier v. Nat'l Collegiate Athletic Ass'n*, C.A. No. 1:24-00238 (M.D.N.C. filed Mar. 18, 2024), ECF No. 1.

- 3 -

IT IS THEREFORE ORDERED that the motion for centralization of these actions is denied.

PANEL ON MULTIDISTRICT LITIGATION

_____
Karen K. Caldwell
Chair

Matthew F. Kennelly            David C. Norton
Roger T. Benitez               Dale A. Kimball
Madeline Cox Arleo

**IN RE: COLLEGE ATHLETE COMPENSATION
ANTITRUST LITIGATION**  MDL No. 3105

**SCHEDULE A**

<u>Northern District of California</u>

CARTER, ET AL. v. NATIONAL COLLEGIATE ATHLETIC ASSOCIATION,
   ET AL., C.A. No. 3:23−06325

<u>District of Colorado</u>

FONTENOT v. NATIONAL COLLEGIATE ATHLETIC ASSOCIATION,
   ET AL., C.A. No. 1:23−03076