**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

ALEX FONTENOT and MYA
HOLLINGSHED, Individually and on Behalf
of All Those Similarly Situated,

       Plaintiff,

v.

NATIONAL COLLEGIATE ATHLETIC
ASSOCIATION; SOUTHEASTERN
CONFERENCE;  PAC-12 CONFERENCE;
THE BIG TEN CONFERENCE, INC.; THE
BIG TWELVE CONFERENCE, INC.; and
ATLANTIC COAST CONFERENCE,

       Defendants.

Case No. 1:23-cv-03076-CNS-STV

**<u>DEFENDANTS' MOTION TO TRANSFER UNDER 28 U.S.C. § 1404(a)</u>**

## TABLE OF CONTENTS

I.   INTRODUCTION ......................................................................................................... 1

II.   BACKGROUND .......................................................................................................... 2

   A.   The Northern District Of California's Extensive History With Related And
Overlapping Actions .................................................................................................. 2

   B.   The JPML Proceeding ........................................................................................ 3

II.   LEGAL STANDARD .................................................................................................. 5

III.   ARGUMENT ............................................................................................................. 6

   A.   The Interests Of Justice Are Best Served By Transfer ....................................... 6

   B.   The Northern District Of California Is The More Convenient Forum .................. 9

       1.   *The Discretionary First-To-File Rule Does Not Apply Here* .............................. 9

       2.   *The Convenience Factors Weigh Heavily In Favor Of Transfer* ...................... 10

       a)   *Cost Of Proof* ..................................................................................... 10

       b)   *Accessibility Of Witnesses And Sources Of Proof* ....................................... 12

       c)   *Plaintiffs' Choice Of Forum* .................................................................. 13

       d)   *Other Factors* ..................................................................................... 14

IV.   CONCLUSION ......................................................................................................... 14

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

### CASES

*Aurora Bank FSB v. Home Loan Ctr., Inc.*,
No. 12-cv-02888-CMA-MJW, 2013 WL 2014182 (D. Colo. May 14,
2013) ................................................................................................................... 5, 6

*Bewley v. Nat'l Collegiate Athletic Ass'n*,
No. 1:23-cv-15570 (N.D. Ill.) ................................................................................ 3, 9

*Brantmeier v. Nat'l Collegiate Athletic Ass'n*,
No. 1:24-00238 (M.D.N.C.) ....................................................................................... 3

*Carter v. National Collegiate Athletic Association et al.*,
Case No. 3:23-cv-06325 (N.D. Cal.) ................................................................*passim*

*Chrysler Credit Corp. v. Country Chrysler, Inc.*,
928 F.2d 1509 (10th Cir. 1991) ............................................................................ 5, 6

*Cont'l Grain Co. v. The Barge FBL-585*,
364 U.S. 19 (1960) .................................................................................................. 7

*Ests. of Von Coley v. Hillenbrand Indus., Inc.*,
No. CIV-06-1190-R, 2007 WL 9711023 .................................................................. 13

*House v. Nat'l Collegiate Athletic Ass'n et al.*,
No. 4:20-cv-03919 (N.D. Cal.) .........................................................................*passim*

*Hubbard v. Nat'l Collegiate Athletic Ass'n et al.*,
No. 4:23-cv-01593 (N.D. Cal.) .........................................................................*passim*

*In re Choice Hotels, Inc. Sec. Litig.*,
No. 07-cv-00734-REB-BNB, 2008 WL 793621 (D. Colo. Mar. 24, 2008) ................ 13

*In re College Athlete Comp. Antitrust Litig.*,
MDL No. 3105 .................................................................................................*passim*

*In re Nat'l Collegiate Athletic Ass'n Grant-in-Aid Cap Antitrust Litigation*,
N.D. Cal. No. 4:14-md-02541 ............................................................................*passim*

*Kerotest Mfg. Co. v. C-O-Two First Equip. Co.*,
342 U.S. 180 (1952) ................................................................................................. 9

**DEFENDANTS' MOTION TO TRANSFER UNDER 28 U.S.C. § 1404(a)     Page ii**

*Keymark Enters., LLC v. Eagle Metal Prods.*,
No. 08-cv-00662, 2008 WL 4787590 (D. Colo. Oct. 30, 2008) ........................... 9, 10

*Koster v. (Am.) Lumbermens Mut. Cas. Co.*,
330 U.S. 518 (1947) ................................................................................................ 13

*O'Bannon v. Nat'l Collegiate Athletic Ass'n et al.*,
7 F. Supp. 3d 955 (N.D. Cal. 2014), *aff'd in part, vacated in part*, 802
F.3d 1049 (9th Cir. 2015) ...................................................................................... 2, 3

*Oliver v. Nat'l Collegiate Athletic Ass'n*,
No. 4:20-cv-04527 (N.D. Cal.) ................................................................................ 2

*Papaleo v. Cingular Wireless Corp.*,
No. C-07-1234 MMC, 2007 WL 1238713 (N.D. Cal. Apr. 26, 2007) ...................... 12

*Rogers v. Elder*,
No. 21-cv-01278-NRN, 2022 WL 348470 (D. Colo. Jan. 5, 2022) ......................... 10

*Scott M. v. Cigna Health and Life Ins. Co.*,
No. 4:21-cv-00007-DN-PK, 2021 WL 3194732 (D. Utah July 28, 2021) ................. 14

*Tennessee v. Nat'l Collegiate Athletic Ass'n*,
No. 3:24-cv-00033 (E.D. Tenn.) ............................................................................... 3

*U.S. Fire Ins. Co. v. Goodyear Tire & Rubber Co.*,
920 F.2d 487 (8th Cir. 1990) .................................................................................... 9

*Wells Fargo Bank, N.A. Tr. for Natividad Caballero 2007 Ins. Tr. v.*
*Principal Life Ins. Co.*,
No. CV 09-00068 DDP, 2009 WL 10671947 (C.D. Cal. Apr. 22, 2009) .................. 10

## STATUTES

28 U.S.C.
§ 1404 ...............................................................................................................*passim*
§ 1407 ...................................................................................................................... 3

## OTHER AUTHORITIES

ADMINI. OFF. OF THE UNITED STATES CTS., FED. CT. MGMT. STATISTICS
(December 2023) ..................................................................................................... 14

Manual for Complex Litigation (Fourth) § 21.15 at 263-64 (2004) ................................. 8

This action belongs in the United States District Court for the Northern District of California. Pursuant to 28 U.S.C. § 1404(a), Defendants move to transfer the case there.

## I.    INTRODUCTION

This action overlaps with *Carter v. National Collegiate Athletic Association et al.*, Case No. 3:23-cv-06325 (N.D. Cal.).  There is no dispute that this action and *Carter* "involve common questions of fact arising from allegations that the NCAA and the Power 5 Conferences violate the Sherman Act by prohibiting student-athletes from receiving compensation for their athletic services.  The complaints identify the same alleged relevant market for the labor of Division I college athletes and propose overlapping nationwide classes."  *In re College Athlete Comp. Antitrust Litig.*, MDL No. 3105 (hereinafter "JPML"), ECF No. 58 at 1-2.  As a result, all parties to both actions agree that litigating them in the same district promotes the interests of judicial economy and efficiency, avoids the risk of inconsistent rulings, and eliminates duplicative discovery. *See* JPML, ECF No. 2-1 at 1-2, 7 (*Carter* plaintiffs seeking consolidation and centralization of *Carter* and *Fontenot* to avoid the risk of "duplicative discovery, inconsistent rulings, overlapping classes, and the inefficient use of judicial and party resources"); *Carter*, ECF No. 85 at 1 (*Fontenot* plaintiffs urging the *Carter* court that transfer is "[i]n the interest of preserving judicial resources" given the substantial overlap between *Fontenot* and *Carter*).

The only question that needs to be resolved is where the two cases should be litigated—in the Northern District of California, or in this Court.  That issue has already been teed up in the Northern District of California, with the *Fontenot* plaintiffs having

moved in that court to intervene and transfer *Carter* here. *Carter*, ECF No. 85. As Defendants have made clear in that case, the Northern District of California is the appropriate forum for this litigation. Given that court's extensive history with related antitrust litigations preceding *Carter* and *Fontenot* and the convenience factors strongly favoring that district, the Court should transfer this action to the Northern District of California.

## II.    BACKGROUND

### A. The Northern District Of California's Extensive History With Related And Overlapping Actions

Collegiate student-athletes have been challenging NCAA rules regulating student-athlete compensation and benefits in a series of antitrust litigations since 2009. This case is only one chapter in that ongoing, fifteen-year saga. In similar nationwide antitrust class actions—all in the Northern District of California—collegiate student-athletes have serially challenged a common set of NCAA rules precluding additional compensation: (1) from "the sale of licenses to use the student-athletes' names, images, and likenesses" ("NIL") (*O'Bannon v. Nat'l Collegiate Athletic Ass'n et al.*, 7 F. Supp. 3d 955, 963 (N.D. Cal. 2014), *aff'd in part, vacated in part*, 802 F.3d 1049 (9th Cir. 2015)), (2) for educational achievement (*In re Nat'l Collegiate Athletic Ass'n Grant-in-Aid Cap Antitrust Litigation*, N.D. Cal. No. 4:14-md-02541, ("*Alston*")), (3) for NIL again, this time through damages based on alleged lost compensation from both NCAA member institutions and third-parties (*House v. Nat'l Collegiate Athletic Ass'n et al.*, No. 4:20-cv-03919 (N.D. Cal.)); *Oliver v. Nat'l Collegiate Athletic Ass'n*, No. 4:20-cv-04527 (N.D. Cal.)), consolidated as *In re College Athlete NIL Litigation*, No. 4:20-cv-03919 (N.D. Cal.) ("*House*")), (4) for the

payments permitted by *Alston* (*Hubbard v. Nat'l Collegiate Athletic Ass'n et al.*, No. 4:23-cv-01593 (N.D. Cal.)), and (5) for providing athletic services—the very same NCAA rules challenged in this case (*Carter*, No. 3:23-cv-06325 (N.D. Cal.)).[1]

Each of those cases and this action arise from a common issue: whether and how student-athletes should be compensated in the alleged nationwide labor market for their services. The Northern District of California is intimately familiar with that question, the parties and counsel, and the rules and regulations governing college athletics. That district has presided over multi-year litigations and ultimately a trial in both *O'Bannon* and *Alston*. It has presided over *House* for almost four years, certified four classes of plaintiffs, and scheduled trial for January 2025. *See House*, ECF No. 243. And it is evaluating class certification in *Hubbard* with trial scheduled for this December. *See Hubbard*, ECF No. 134. Moreover, the *Carter* parties are actively working to establish a protective order and ESI stipulation patterned on the parties' agreements in *House*, *Hubbard*, *Alston*, and *O'Bannon* so that discovery in those prior cases may be used in *Carter*.

## B. The JPML Proceeding

On January 16, 2024, given the substantial overlap between these related actions and the Northern District of California's extensive experience presiding over them, the *Carter* plaintiffs sought to centralize *Carter* and *Fontenot* (and later, *Bewley*) in the Northern District of California pursuant to 28 U.S.C. § 1407. JPML, ECF No. 2-1; ECF

---

[1] Three additional related actions challenging NCAA rules are pending outside of the Northern District of California; none are in the District of Colorado. *See Bewley v. Nat'l Collegiate Athletic Ass'n*, No. 1:23-cv-15570 (N.D. Ill.); *Tennessee v. Nat'l Collegiate Athletic Ass'n*, No. 3:24-cv-00033 (E.D. Tenn.); *Brantmeier v. Nat'l Collegiate Athletic Ass'n*, No. 1:24-00238 (M.D.N.C.).

**DEFENDANTS' MOTION TO TRANSFER UNDER 28 U.S.C. § 1404(a)      Page 3**

No. 36.  Defendants supported that motion and further sought to centralize *House* and *Hubbard*.  JPML, ECF No. 32 at 1.  The *Fontenot* plaintiffs opposed centralization, arguing that centralization of *Carter* and *Fontenot* was unnecessary given the parties could just transfer either action under § 1404.  JPML, ECF No. 30 at 1.

Both *Carter* and this case were stayed pending the JPML's decision.  As Defendants flagged in seeking that stay here, "[t]his case belongs with the others like it in the Northern District of California, whether by order of the JPML or by an order of this Court on a motion to transfer venue under 28 USC § 1404, which Defendants will file if necessary."  ECF No. 81 at 2.

While the *Carter* plaintiffs' centralization motion was pending (and while the stay was in place), the *Fontenot* plaintiffs moved to intervene in *Carter* and transfer that case to this district.  *Carter*, ECF No. 85.  The *Carter* plaintiffs and Defendants both opposed the *Fontenot* plaintiffs' motion, arguing that it was procedurally and substantively improper given (a) *Carter* was stayed pending the JPML ruling and (b) the Northern District of California is the most convenient and appropriate forum for these overlapping cases. *Carter*, ECF No. 86, 87.  Defendants further noted that if the JPML declined centralization, Defendants would seek to transfer *Fontenot* to the Northern District of California under § 1404.  *Carter*, ECF No. 87 at 8 n.4.  The *Carter* court has scheduled a hearing on the *Fontenot* plaintiffs' motion to intervene and transfer that is currently set for May 23, 2024. *Carter*, ECF No. 94.

On April 11, 2024, the JPML issued an order denying centralization of *Carter* and *Fontenot*, explaining that with only "a minimal number of actions [] involved," a "Section

1404 transfer could eliminate the multidistrict character of this litigation." JPML, ECF No. 58 at 2. The JPML further acknowledged that *Carter* and *Fontenot* seek a share of the same proceeds at issue in the related *House* litigation, set for trial in the Northern District of California in January 2025, and thus could be driven to resolution following resolution of *House*. *Id.* Consistent with their representations to the *Carter* court and this Court, Defendants now move to transfer *Fontenot* to the Northern District of California as the more convenient forum, so that the cases can be litigated in the same district that has presided over related and overlapping litigations for the last fifteen years.

## II.    LEGAL STANDARD

Transfer is warranted where the moving party establishes that "(1) the action could have been brought in the alternate forum, (2) the current forum is inconvenient, and (3) the interests of justice are better served in the alternate forum." *Aurora Bank FSB v. Home Loan Ctr., Inc.*, No. 12-cv-02888-CMA-MJW, 2013 WL 2014182, at *1 (D. Colo. May 14, 2013) (citing *Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509, 1515 (10th Cir. 1991)). There is no question that this action could have been brought in the Northern District of California given the *Fontenot* plaintiffs assert a federal antitrust claim on behalf of a nationwide class. *Fontenot*, ECF No. 1 ¶¶ 119-26. This Court need only evaluate whether transfer is warranted under the interests of justice—including the risk of inconsistent judgments and multiplicity of litigation—and the convenience factors.[2] For

---

[2] The convenience factors include: "the plaintiff's choice of forum; the accessibility of witnesses and other sources of proof, including the availability of compulsory process to insure attendance of witnesses; the cost of making the necessary proof; questions as to the enforceability of a judgment if one is obtained; relative advantages and obstacles to a fair trial; difficulties that may arise from congested dockets; the possibility of the

both considerations, the Northern District of California is the more appropriate and convenient forum.

## III.    ARGUMENT

### A.  The Interests Of Justice Are Best Served By Transfer

Transfer to the Northern District of California prevents the possibility of inconsistent rulings and the wasting of judicial resources.  There is no question that these actions involve common and overlapping questions of fact and present the same legal issues for either court to resolve.  *See, e.g.*, *Carter*, ECF No. 85 at 3-4 (*Fontenot* plaintiffs seeking transfer based on the "overlap" between *Carter* and *Fontenot*); JPML, ECF No. 2-1 at 4 (*Carter* plaintiffs detailing the substantial overlap between *Carter* and *Fontenot*, including that plaintiffs "challenge the same anticompetitive conduct . . . on behalf of an overlapping class of athletes . . . in the same alleged markets . . . and seek the same relief").  Because of their duplicative nature, all parties to both actions agree that the interests of justice and judicial and party efficiency are best served by *Carter* and *Fontenot* proceeding in the same district.  *See, e.g.*, JPML, ECF No. 2-1 at 7 (without transfer, "these overlapping, putative, antitrust class actions risk duplicative discovery, inconsistent rulings, overlapping classes, and the inefficient use of judicial and party resources"); *Carter*, ECF No. 85 at 1 (seeking transfer to "preserv[e] judicial resources"), 7 ("no doubt [*Carter*] can be consolidated with *Fontenot*").

---

existence of questions arising in the area of conflict of laws; the advantage of having a local court determine questions of local law; and, all other considerations of a practical nature that make a trial easy, expeditious and economical."  *Aurora Bank*, 2013 WL 2014182, at *1-2 (quoting *Chrysler Credit*, 928 F.2d at 1516).

**DEFENDANTS' MOTION TO TRANSFER UNDER 28 U.S.C. § 1404(a)**    **Page 6**

The risk of inconsistent rulings is especially high here given the complexity of litigation, involvement of third parties, extensive litigation history, and plaintiffs purporting to represent overlapping classes, which in turn overlap with the already certified *House* class.  Maintaining these related actions in two different districts raises the potential for conflicting rulings at each step of litigation, including inconsistent motion to dismiss, class certification, and dispositive motion rulings, as well as other pretrial rulings and trial outcomes.  In addition, Defendants anticipate arguing that plaintiffs have impermissibly split their claims between at least *House* on the one hand and *Carter* and *Fontenot* on the other.  *See, e.g.*, *Carter*, ECF No. 85 at 5 (*Fontenot* plaintiffs explaining that *Fontenot* "takes aim at the full cut of revenue" while *House* "merely [targets] the revenue from their name, image, and likeness"). Maintaining these three cases in two separate districts requires Defendants to present this argument to at least two different courts, risking even more conflicting decisions that promote uncertainty and inefficiency and, in turn, wasting court time, energy, and resources.

Allowing these cases to proceed in two separate districts is undoubtedly an inefficient use of judicial and party resources.  *See* JPML, ECF No. 2-1 at 1-2, 7; *Carter*, ECF No. 85 at 1, 7; *see also Cont'l Grain Co. v. The Barge FBL-585*, 364 U.S. 19, 26 (1960) ("To permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy and money that § 1404(a) was designed to prevent.").  And that is only more evident in the context of class actions, where "coordination among the judges handling the cases may be critical" to avoid conflicting rulings or "duplicative work and expense."

**DEFENDANTS' MOTION TO TRANSFER UNDER 28 U.S.C. § 1404(a)     Page 7**

Manual for Complex Litigation (Fourth) § 21.15 at 263-64 (2004).

As between the two potential forums, it would be most efficient for the Northern District of California to address these overlapping and conflicting claims, given that district's extensive experience presiding over serial related actions since 2009. Because *Carter* and *Fontenot* are essentially the same case, discovery is likely to be nearly identical in both cases. There is no question that it would be far more convenient if that discovery were conducted in a single district governed by the same local rules rather than supervised by two different districts. And as between the two districts, the Northern District of California is the superior choice because Defendants (and counsel in *Carter*) have developed a corpus of work allowing a number of pretrial issues to be resolved quickly. *See, e.g.*, *Hubbard*, ECF Nos. 142, 143, 148, 154. Those issues include developing protocols on e-discovery and handling the confidential information of the parties to this case as well as the numerous third parties whose interests are implicated.

For example, the parties (along with third-party networks as intervenors) worked extensively in the Northern District of California to negotiate and stipulate to protective orders governing confidential information surrounding third-party media agreements and the revenues therefrom. *See, e.g.*, *Alston*, ECF Nos. 189, 234, 512, 539, 540, 1027, 1237, 1238; *House*, ECF Nos. 137, 148, *Hubbard*, ECF No. 142. Such confidential information is relevant here too and will only complicate proceeding in this District where the parties have no similar corpus of work to draw on and would be required to coordinate network intervention and approval all over again. In contrast, if transferred to the Northern District of California, the parties can simply update the protective orders previously used

**DEFENDANTS' MOTION TO TRANSFER UNDER 28 U.S.C. § 1404(a)**    **Page 8**

in *Alston*, *House*, and *Hubbard*.

**B.  The Northern District Of California Is The More Convenient Forum**

The *Fontenot* plaintiffs attempt to paint this case as the first-filed action and thus insist that these overlapping cases—*Fontenot* and *Carter*—should proceed in Colorado. Not only is *Fontenot* not the true first case, but even if it were, the first-to-file rule does not apply here.  The convenience factors also strongly support transferring this case to the Northern District of California, outweighing any peripheral applicability of the first-to-file rule.

### 1.    *The Discretionary First-To-File Rule Does Not Apply Here*

The Court has "ample" discretion in considering whether to apply the first-to-file rule.  *Kerotest Mfg. Co. v. C-O-Two First Equip. Co.*, 342 U.S. 180, 183-84 (1952).  The rule should not be applied mechanically but, rather, "in a manner best serving the interests of justice."  *See Keymark Enters., LLC v. Eagle Metal Prods.*, No. 08-cv-00662, 2008 WL 4787590, at *3 (D. Colo. Oct. 30, 2008) (quoting *U.S. Fire Ins. Co. v. Goodyear Tire & Rubber Co.*, 920 F.2d 487, 488-89 (8th Cir. 1990)).  The rule has no utility here, and the Court should decline to apply it.

First, *Fontenot* is not the true "first" action.  *Carter* and *Fontenot* are just two of several cases challenging NCAA restrictions on student-athletes' benefits and compensation, and *Fontenot* is one of the later cases to be filed.  With one exception (*Bewley*), all cases preceding *Fontenot* were prosecuted or are pending in the Northern District of California.  And *Fontenot* is "simply a revival of the claims in *Alston*"—the true first-filed action challenging the NCAA's restriction on pay-for-performance, which was

litigated to conclusion in the Northern District of California.  JPML, ECF No. 36 at 15.

Second, even if *Fontenot* is considered "first," the first-to-file rule has no utility here. *Fontenot* and *Carter* were filed only days apart, were both stayed pending the JPML ruling, and have not progressed to different stages of litigation.  In these instances, courts have recognized that "the first-to-file rule is not entitled to 'mechanical application'" but, rather, should be "applied in a manner best serving the interests of justice."  *Rogers v. Elder*, No. 21-cv-01278-NRN, 2022 WL 348470, at *4 (D. Colo. Jan. 5, 2022) (quoting *Keymark*, 2008 WL 4787590, at *3); *see also Wells Fargo Bank, N.A. Tr. for Natividad Caballero 2007 Ins. Tr. v. Principal Life Ins. Co.*, No. CV 09-00068 DDP (RZx), 2009 WL 10671947, at *4 (C.D. Cal. Apr. 22, 2009) ("[T]he limited time period [between actions] diminishes the importance of the earlier filing date: the general assumptions of convenience underlying the first-to-file rule have less force because the first-filed forum has not expended resources on the suit.").  Where both cases are in their infancy, no answers or motions to dismiss have been filed, and no discovery has taken place, there is no basis to consider this case as having a "first-filed" advantage over *Carter*.  The Court has discretion to and should deny application of the rule here.

## 2. *The Convenience Factors Weigh Heavily In Favor Of Transfer*

The Northern District of California is the more convenient forum, with substantially more connection to the parties and conduct at issue and intimate familiarity with the complex factual and legal issues presented.

### a) *Cost Of Proof*

Transfer to the Northern District of California will improve efficiency.  The Northern

District of California has presided over related antitrust litigations since 2009, involving the same parties, similar challenged conduct, overlapping classes, the same alleged markets, and overlapping relief, and has produced established precedent on the substantive antitrust issues that will govern this case.  That district has gained extensive specialized experience evaluating NCAA antitrust challenges and navigating the myriad procedural and discovery issues involved in this case, such as the Family Educational Rights and Privacy Act's application to individual athlete scholarship and financial information and the enforcement of protective orders for highly-confidential third-party broadcast network information.  While this Court is capable of doing the same, it would be starting from scratch, rather than simply incorporating the efficiencies already established in the myriad related cases pending in the Northern District of California.

In addition, substantial discovery has already occurred in the Northern District of California in the earlier-filed cases, and that district has incorporated procedures coordinating discovery across the multiple cases pending there.   For example, all discovery in *Alston* was deemed produced in *House*, and all discovery in *House* was deemed produced in *Hubbard*.  *House*, ECF No. 132 at 3; *Hubbard*, ECF No. 143 at 2.  To facilitate that discovery, the Protective Orders from *House* were incorporated into *Hubbard*.  *Hubbard*, ECF No. 142 at 1.  Similar coordination regarding discovery will likely occur in *Carter*, and likewise in *Fontenot*, if transferred, which will benefit the parties and the Court by streamlining the number of preliminary issues to be decided.  It would be more cost-effective and convenient to transfer this case to the Northern District of California so that such coordination can continue.

### b)    Accessibility Of Witnesses And Sources Of Proof

Numerous class members (including a named plaintiff in *Carter*) and one of the Defendants (the Pac-12 Conference) reside in the Northern District of California. In addition, the likely witnesses and sources of proof will be affiliated with Defendants or their member institutions (i.e., colleges and universities). Defendants are geographically dispersed throughout the United States, and not one of them is headquartered in Colorado.[3] Defendants' member institutions (college and universities) also are spread across the country, and at least five NCAA Division I universities are located within the Northern District of California. *Carter*, ECF No. 1 ¶ 17. The Northern District of California is also more geographically accessible given it is located in an area serviced by three different airports. Thus, witnesses and other sources of proof will be more available in California than in Colorado, reducing the chances of witnesses having to "travel to two different forums to attend court proceedings." *Papaleo v. Cingular Wireless Corp.*, No. C-07-1234 MMC, 2007 WL 1238713, at *1 (N.D. Cal. Apr. 26, 2007).

Moreover, regardless of their residence, both the *Carter* plaintiffs and Defendants would prefer to litigate this case in the Northern District of California where the various related and overlapping cases are pending. *See* JPML, ECF Nos. 2-1, 32. More primary counsel, on both sides of the "v," are located in California than any other jurisdiction. And not one of Defendants' lead counsel is located in Denver, thus necessitating additional expense for local counsel for all six Defendants without transfer.

---

[3] Defendants' principal places of business are in Indiana, California, Alabama, North Carolina, Texas, and Illinois. *Fontenot*, ECF No. 78 ¶¶ 25-30.

### c)     Plaintiffs' Choice Of Forum

The sole connection this case has to the District of Colorado is that it is the named plaintiffs' choice of forum.  But the choice of forum by two named plaintiffs seeking to represent a nationwide class—who are also members of the classes in the related Northern District of California cases—does not weigh against transfer.  *See In re Choice Hotels, Inc. Sec. Litig.*, No. 07-cv-00734-REB-BNB, 2008 WL 793621, at *2 (D. Colo. Mar. 24, 2008) ("The plaintiffs' choice of forum is entitled to some deference. However, as the plaintiffs concede, the plaintiffs' choice of forum receives reduced deference in a proposed class action."); *Ests. of Von Coley v. Hillenbrand Indus., Inc.*, No. CIV-06-1190-R, 2007 WL 9711023, at *2 ("Courts traditionally give less deference to a plaintiff's chosen forum in a class action lawsuit.").

"[W]here there are hundreds of potential plaintiffs, . . . all of whom could with equal show of right go into their many home courts, the claim of any one plaintiff that a forum is appropriate merely because it is his home forum is considerably weakened."  *Koster v. (Am.) Lumbermens Mut. Cas. Co.*, 330 U.S. 518, 524 (1947).  There are allegedly hundreds of potential plaintiffs in this action, any one of whom could bring this case in their home state. *Fontenot*, ECF No. 78 ¶ 37 ("Plaintiffs are informed and believe that the proposed class includes over 100 members residing in various parts of the United States.").  Indeed, two members of the putative class (DeWayne Carter and Sedona Prince, two of the named plaintiffs in *Carter*) *have* brought their own claims on behalf of effectively the same class, and chose to do so in the Northern District of California.  The decision of two named plaintiffs to file in this forum cannot overcome the myriad factors

supporting transfer to the Northern District of California.

### d)    Other Factors

The remaining transfer factors are, at most, neutral.  Caseload congestion in this District and the Northern District of California is approximately equal.  Judges in both districts have a large volume of cases, with this District being slightly busier (598 weighted filings per judge, compared to 486 in the Northern District of California).  ADMINI. OFF. OF THE UNITED STATES CTS., FED. CT. MGMT. STATISTICS (December 2023).  If anything, proceeding in the Northern District of California will be faster, not only because it is slightly less congested but also because the parties will be able to draw on the e-discovery protocols and protective orders already established in the related cases pending in that district (*Alston*, *House*, and *Hubbard*).  *See supra* 8.

Because this action does not involve any state law issues, no potential conflict of law questions will arise, and knowledge of applicable law is not a factor to consider.  *Scott M. v. Cigna Health and Life Ins. Co.*, No. 4:21-cv-00007-DN-PK, 2021 WL 3194732, at *2 (D. Utah July 28, 2021) (holding that where case involves federal question and applies federal law, "[q]uestions arising in the areas of conflicts of law or local law will not occur" (quotation marks omitted)).  Nor will there be any questions as to the enforceability of a judgment if one is obtained in either court.

## IV.    CONCLUSION

For the foregoing reasons, Defendants request that the Court transfer this action to the United States District Court for the Northern District of California pursuant to 28 U.S.C. § 1404(a).

Dated:  April 19, 2024                              Respectfully Submitted,


**WILKINSON STEKLOFF LLP**                          **LATHAM & WATKINS LLP**

By: */s/ Rakesh N. Kilaru*                          By: */s/ Christopher S. Yates*
Rakesh N. Kilaru                                    Christopher S. Yates
Calanthe Arat                                       Aaron T. Chiu
Tamarra Matthews Johnson                            505 Montgomery Street, Suite 2000
2001 M Street NW, 10th Floor                        San Francisco, CA 94111
Washington, DC 20036                                Telephone:  (415) 391-0600
Telephone:  (202) 847-4000                          Facsimile:  (415) 395-8095
Facsimile:  (202) 847-4005                          chris.yates@lw.com
rkilaru@wilkinsonstekloff.com                       aaron.chiu@lw.com
carat@wilkinsonstekloff.com
tmatthewsjohnson@wilkinsonstekloff.com              Anna M. Rathbun
                                                    555 Eleventh Street, NW, Suite 1000
*Attorneys for Defendant*                           Washington, DC 20004
*National Collegiate Athletic Association*          Telephone:  (202) 637-3381
                                                    Facsimile:  (202) 637-2201
                                                    anna.rathbun@lw.com

                                                    **KING & SPALDING LLP**

                                                    By: */s/ Cliff Stricklin*
                                                    Cliff Stricklin
                                                    Jared Michael Lax
                                                    1401 Lawrence Street, Suite 1900
                                                    Denver, CO 80202
                                                    Telephone:  (720) 535-2327
                                                    cstricklin@kslaw.com
                                                    jlax@kslaw.com

                                                    *Attorneys for Defendant*
                                                    *The Atlantic Coast Conference*

**MAYER BROWN LLP**

By: */s/ Britt M. Miller*
Britt M. Miller
Daniel T. Fenske
71 South Wacker Drive
Chicago, IL 60606
Telephone:  (312) 782-0600
Facsimile:  (312) 701-7711
bmiller@mayerbrown.com
dfenske@mayerbrown.com

**BROWNSTEIN HYATT FARBER
SCHRECK LLP**

Julian Richard Ellis, Jr.
Richard B. Benenson
675 15th Street, Suite 2900
Denver, CO 80202
Telephone:  (303) 223-1100
Facsimile:  (303) 223-1111
jellis@bhfs.com
rbenenson@bhfs.com

*Attorneys for Defendant
The Big Ten Conference, Inc.*

**SIDLEY AUSTIN LLP**

By: */s/ Angela C. Zambrano*
Angela C. Zambrano
Natali Wyson
2021 McKinney Avenue, Suite 2000
Dallas, TX 75201
Telephone:  (214) 969-3529
Facsimile:  (214) 969-3558
angela.zambrano@sidley.com
nwyson@sidley.com

**LEWIS ROCA ROTHERGERBER
CHRISTIE LLP**

Abby Caroline Harder
Douglas B. Tumminello
1601 19th Street, Suite 1000
Denver, CO 80202
Telephone:  (303) 628-9575
Facsimile:  (303) 623-9222
aharder@lewisroca.com
dtumminello@lewisroca.com

*Attorneys for Defendant
The Big 12 Conference, Inc.*

**COOLEY LLP**

By: */s/ Whitty Somvichian*
Whitty Somvichian
Kathleen R. Hartnett
Ashley Kemper Corkery
Gregory John Merchant
Mark Frederick Lambert
Rebecca Lynne Tarneja
3 Embarcadero Center, 20th Floor
San Francisco, CA 94111-4004
Telephone:  (415) 693-2000
Facsimile:  (415) 693-2222
wsomvichian@cooley.com
khartnett@cooley.com
acorkery@cooley.com
gmerchant@cooley.com
mlambert@cooley.com
rtarneja@cooley.com

*Attorneys for Defendant*
*Pac-12 Conference*

**ROBINSON, BRADSHAW & HINSON, P.A.**

By: */s/ Robert W. Fuller*
Robert W. Fuller, III
Lawrence C. Moore, III
Amanda P. Nitto
Travis S. Hinman
Patrick H. Hill
101 N. Tryon St., Suite 1900
Charlotte, NC 28246
Telephone:  (704) 377-2536
Facsimile:  (704) 378-4000
rfuller@robinsonbradshaw.com
lmoore@robinsonbradshaw.com
anitto@robinsonbradshaw.com
thinman@robinsonbradshaw.com
phill@robinsonbradshaw.com

**WHEELER TRIGG O'DONNELL LLP**

Michael L. O'Donnell
Kathryn A. Reilly
Michael T. Williams
Michael R. Krantz
370 17th Street, Suite 4500
Denver, CO 80202-5647
Telephone:  (303) 244-1867
Facsimile:  (303) 244-1879
odonnell@wtotrial.com
reilly@wtotrial.com
williams@wtotrial.com
krantz@wtotrial.com

*Attorneys for Defendant*
*Southeastern Conference*

**DEFENDANTS' MOTION TO TRANSFER UNDER 28 U.S.C. § 1404(a)     Page 17**

## CERTIFICATE OF CONFERENCE

I HEREBY CERTIFY that on April 16, 2024, pursuant to D.C.COLO.LCivR 7.1, counsel for the Defendants conferred with counsel for the Plaintiff by phone and email regarding the relief requested in this motion. Plaintiff opposes the relief requested.

*/s/ Cliff Stricklin*

## CERTIFICATE OF SERVICE (CM/ECF)

I HEREBY CERTIFY that on April 19, 2024, I electronically filed the foregoing DEFENDANTS' MOTION TO TRANSFER UNDER 28 U.S.C. § 1404(a) with the Clerk of Court using the CM/ECF system which will send notification of such filing to all counsel of record.

*/s/ Destiny Brittain*