# UNITED STATES DISTRICT COURT
## DISTRICT OF COLORADO

| | |
|---|---|
| ALEX FONTENOT and MYA HOLLINGSHED, Individually and on Behalf of All Those Similarly Situated, | CASE NO. 1:23-CV-03076-CNS-STV |
| Plaintiffs, | |
| vs. | **Opposition to Defendants' Motion to Transfer Under 28 U.S.C. § 1404(a)** |
| NATIONAL COLLEGIATE ATHLETIC ASSOCIATION; SOUTHEASTERN CONFERENCE; PAC-12 CONFERENCE; THE BIG TEN CONFERENCE, INC.; THE BIG TWELVE CONFERENCE, INC.; and ATLANTIC COAST CONFERENCE; | |
| Defendants. | |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ....................................................................................ii

INTRODUCTION .................................................................................................1

BACKGROUND .................................................................................................2

ARGUMENT .......................................................................................................4

    I.      Plaintiffs' choice of forum favors this venue .....................................6

    II.     Accessibility of witnesses and convenience to parties strongly
          favors Colorado ...............................................................................7

    III.    The cost of proof favors this venue ................................................10

    IV.    Court congestion strongly favors this venue ..................................13

    V.     Keeping this first-filed case here avoids prejudice to Plaintiffs
          and the class...................................................................................14

CONCLUSION ..................................................................................................15

**OPPOSITION TO DEFENDANTS' MOTION TO TRANSFER**

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alltrade, Inc. v. Uniweld Prod., Inc.*,
   946 F.2d 622 (9th Cir. 1991)................................................................. 11

*Arrow Elecs., Inc. v. Deco Lighting, Inc.*,
   No. 18-CV-01100-RM-KLM, 2018 WL 4853338 (D. Colo. Oct. 5, 2018),
   *report and recommendation adopted,* 2019 WL 926921 (D. Colo. Feb.
   26, 2019)........................................................................................ 5, 6, 7

*Bewley v. Nat'l Collegiate Athletic Ass'n*,
   No. 23 CV 15570 (N.D. Ill.) ......................................................................... 3

*Brantmeier v. Nat'l Collegiate Athletic Ass'n*,
   No. 1:24-00238 (M.D.N.C.) .......................................................................... 4

*Carter v. Nat'l Collegiate Athletic Ass'n*,
   Case No. 3:23-cv-06325 (N.D. Cal.) ..................................................... *passim*

*Choh v. Brown Univ.*,
   No. 3:23-cv-00305 (D. Conn.)..................................................................... 3

*In re Choice Hotels, Inc. Sec. Litig.*,
   No. 07-cv-00734-REB-BNB, 2008 WL 793621 (D. Colo. Mar. 24, 2008).................. 6

*In re College Athlete NIL Litig.*,
   No. 4:20-cv-03919 (N.D. Cal.) ........................................................... *passim*

*Congo Works, LLC v. Gray & Co., Inc.*,
   No. 19-CV-00302-REB-KMT, 2019 WL 13036161 (D. Colo. Oct. 10,
   2019)............................................................................................................ 9

*Emps. Mut. Cas. Co. v. Bartile Roofs, Inc.*,
   618 F.3d 1153 (10th Cir. 2010)............................................................... 7, 8

*In re: Fresh Dairy Prod. Antitrust Litig. (No. II)*,
   959 F. Supp. 2d 1361 (U.S.J.P.M.L. 2013) ................................................. 5

*Halman Aldubi Provident & Pension Funds Ltd. v. Teva Pharm. Indus.
Ltd.*,
   529 F. Supp. 3d 385 (E.D. Pa. 2021)....................................................... 14

**OPPOSITION TO DEFENDANTS' MOTION TO TRANSFER**

*Homewatch Int'l, Inc. v. Pac. Home Care Servs., Inc.*,
  No. 10-CV-03045-REB-KLM, 2011 WL 1660612 (D. Colo. May 2,
  2011) ................................................................................................................ 5

*In re Horseshoe Ent.*,
  337 F.3d 429 (5th Cir. 2003) ............................................................................ 9

*Hubbard v. Nat'l Collegiate Athletic Ass'n*,
  No. 4:23-cv-01593 (N.D. Cal.) .................................................................... 3, 12

*Jim v. CoreCivic of Tennessee, LLC*,
  No. CIV 20-0618 JB/JFR, 2021 WL 4990084 (D.N.M. Oct. 27, 2021) ...................... 5

*Johnson v. Columbia Properties Anchorage, LP*,
  437 F.3d 894 (9th Cir. 2006) ............................................................................ 8

*Koster v. (Am.) Lumbermens Mut. Cas. Co.*,
  330 U.S. 518 (1947) .......................................................................................... 6

*Makor Issues & Rts., Ltd. v. Tellabs, Inc.*,
  256 F.R.D. 586 (N.D. Ill. 2009) ...................................................................... 14

*Masciotra v. Vertafore, Inc.*,
  No. 20-CV-3603-WJM-NYW, 2021 WL 1720860 (D. Colo. Apr. 30,
  2021) .............................................................................................................. 11

*Nat'l Collegiate Athletic Ass'n v. Alston*,
  594 U.S. 69 (2021) .......................................................................................... 12

*Nat'l Credit Union Admin. Bd. v. RBS Sec., Inc.*,
  No. CV 11-5887-GW, 2014 WL 12597071 (C.D. Cal. June 10, 2014) ...................... 4

*O'Bannon v. Nat'l Collegiate Athletic Ass'n*,
  No. C 09-3329 CW, 2009 WL 4899217 (N.D. Cal. Dec. 11, 2009) ........................... 7

*Pizana v. SanMedica Int'l LLC*,
  No. 118CV00644DADSKO, 2020 WL 469336 (E.D. Cal. Jan. 29, 2020) .................. 6

*Rodriguez v. Taco Bell Corp.*,
  No. 1:13-CV-01498-SAB, 2013 WL 5877788 (E.D. Cal. Oct. 30, 2013) ................. 14

*Rogers v. Elder*,
  No. 21-cv-01278-NRN, 2022 WL 348470 (D. Colo. Jan. 5, 2022) .................... 11, 12

*Scheidt v. Klein*,
  956 F.2d 963 (10th Cir. 1992) .............................................................. 2, 5, 8, 10

**OPPOSITION TO DEFENDANTS' MOTION TO TRANSFER**

*Smart v. Nat'l Collegiate Athletic Ass'n*,
No. 123CV00425WBSKJN, 2023 WL 4827366 (E.D. Cal. July 27,
2023).................................................................................................................. 7, 9

*Taylor v. Midland Funding, LLC*,
94 F. Supp. 3d 941 (N.D. Ill. 2015) ............................................................. 5

*Tennessee v. Nat'l Collegiate Athletic Ass'n*,
No. 3:24-cv-00033 (E.D. Tenn.)................................................................... 4

*Texas Gulf Sulphur Co. v. Ritter*,
371 F.2d 145 (10th Cir. 1967).............................................................. 8, 12

*Wallace B. Roderick Revocable Living Tr. v. XTO Energy, Inc.*,
679 F. Supp. 2d 1287 (D. Kan. 2010) ...................................................... 11

*Washington St. Univ., et al., v. Pac-12 Conference, et al.*,
No. 23-2-0027338 (Super. Ct. Wash., Sept. 8, 2023) ............................... 8

**Statutes**

28 U.S.C. § 1404(a) .................................................................................*passim*

**Other Authorities**

15 Fed. Prac. & Proc. Juris. § 3851 (4th ed.) .................................................. 8

*College sports leaders in deep talks to settle NIL antitrust case vs. NCAA*,
ESPN (Apr. 29, 2024), *available at* https://www.espn.com/college-
sports/story/_/id/40053021/college-sports-leaders-deep-talks-settle-nil-
antitrust-case-vs-ncaa................................................................................ 15

Google Flights, *available at*
https://www.google.com/travel/flights?gl=US&hl=en-US............................. 8

*Host Sites*, NCAA.com, *available at*
https://www.ncaa.com/_flysystem/public-
s3/files/Host%20Sites%202022-2026_1.pdf ........................................... 10

*MDL Statistics Report-Distribution of Pending MDL Dockets by District*,
JPML, *available at*
https://www.jpml.uscourts.gov/sites/jpml/files/Pending_MDL_Dockets_
By_District-April-1-2024.pdf ...................................................................... 13

*NCAA's March Madness men's basketball tournament returning to Denver
this weekend*, KUNC (Mar. 17, 2023), *available at*
https://www.kunc.org/news/2023-03-17/ncaas-march-madness-mens-
basketball-tournament-returning-to-denver-this-weekend........................ 10

**OPPOSITION TO DEFENDANTS' MOTION TO TRANSFER**

*U.S. District Court—Judicial Caseload Profile*, USCourts.gov, *available at*
https://www.uscourts.gov/sites/default/files/fcms_na_distprofile1231.20
23_0.pdf.............................................................................................................. 13

**OPPOSITION TO DEFENDANTS' MOTION TO TRANSFER**

After failing to obtain a transfer from the Judicial Panel on Multidistrict Litigation ("JPML"), Defendants recycle the same unsuccessful arguments to again argue that this case belongs in San Francisco. In doing so, they ask the Court to ignore (1) that the named Plaintiffs are residents of Colorado and suffered their injuries here, (2) that this Court is more convenient for nearly *every* party, and (3) that this case was filed first.

Defendants' main argument is that *other* prior cases were litigated in the Northern District of California before Judge Claudia Wilken. As the JPML found, those cases materially differ from this one, and Defendants omit a crucial fact. The only case that *is* similar is the later-filed *Carter* case,[1] but it is not in front of Judge Wilken because she declined to oversee it. *Carter* is instead proceeding before a different Article III judge in a different city. That nullifies all arguments regarding the judicial efficiencies of proceeding in San Francisco because, if transferred, this case would not go to Judge Wilken. Wherever this case proceeds, the judge overseeing it will be starting anew.

Further, Plaintiffs will be prejudiced by transfer. Key arguments that Defendants plan to make in *Carter*—going to potential conflicts and purported claim-splitting due to *Carter*'s counsel also representing the plaintiffs in the earlier Judge Wilken cases— would have zero application in *Fontenot*. But if this case is transferred and consolidated with *Carter*, then Plaintiffs will be forced to fend off arguments that are irrelevant to this case—especially if *Carter*'s counsel is appointed as lead counsel. This is a cleaner and broader case, and it should remain here, unencumbered by inapplicable attacks.

The "party moving to transfer a case pursuant to § 1404(a) bears the burden of establishing that the existing forum is inconvenient," and "unless the balance is strongly

---

[1] *Carter v. Nat'l Collegiate Athletic Ass'n*, Case No. 3:23-cv-06325 (N.D. Cal.).

**OPPOSITION TO DEFENDANTS' MOTION TO TRANSFER**

in favor of the movant the plaintiff's choice of forum should rarely be disturbed." *Scheidt
v. Klein*, 956 F.2d 963, 965 (10th Cir. 1992). With all relevant § 1404(a) factors favoring
this forum—and given the first-filed nature of this case—the motion should be denied.

## BACKGROUND

Alex Fontenot filed his original complaint in this Court on November 20, 2023.
ECF No. 1. Mr. Fontenot is a resident of Colorado, and he worked as a college football
player at the University of Colorado from 2017 to 2022 with much on-field success. *Id.*
¶¶ 23, 113-14. In a recent amended complaint, Mya Hollingshed joined the case as a
named plaintiff. ECF No. 78. Ms. Hollingshed, also a resident of Colorado, starred as a
college basketball player at the University of Colorado from 2017 to 2022, landing her in
the school's all-time record books. *Id.* ¶¶ 24, 123.

The alleged wrongdoing is straightforward: Defendants engaged in wage fixing
by capping Plaintiffs' compensation at artificial levels. *Id.* ¶¶ 130-31. Absent bylaws that
illegally cap athlete compensation, Mr. Fontenot and Ms. Hollingshed "would have
received a competitive share of the television and other revenue being brought in by
Defendants and their member schools." *Id.* ¶¶ 119, 127. Plaintiffs seek to represent a
class of similarly situated college athletes: "All persons who worked as athletes for a
Division I athletic team at an NCAA Division I school." *Id.* ¶ 36.

When Mr. Fontenot brought his complaint, there was no action pending in any
court alleging that college athletes should be paid fair, market-based pay in exchange
for work performed (a "Fair Pay Action"). Other pending actions challenged different
practices, but they were not Fair Pay Actions. *See In re College Athlete NIL Litig.*, No.
4:20-cv-03919 (N.D. Cal.) (a/k/a the "*House*" case) (Wilken, J.) (involving payment for

**OPPOSITION TO DEFENDANTS' MOTION TO TRANSFER**

names, images, and likenesses); *Bewley v. Nat'l Collegiate Athletic Ass'n*, No. 23 CV
15570 (N.D. Ill.) (involving NIL payments); *Choh v. Brown Univ.*, No. 3:23-cv-00305 (D.
Conn.) (involving scholarship payments); *Hubbard v. Nat'l Collegiate Athletic Ass'n*, No.
4:23-cv-01593 (N.D. Cal.) (Wilken, J.) (involving education-related payments).

With no Fair Pay Action pending, college athletes were being damaged by an
unfair, antiquated rule preventing them from being paid for their valuable work. The NIL
Case of *House*, for instance, only sought to allow compensation for name, image, and
likeness; it did not demand true market-value compensation in exchange for work
performed. This *Fontenot* action was the first to fill that void.

Almost three weeks after *Fontenot* was filed, a different set of plaintiffs with
different lawyers filed the *Carter* case. Like *Fontenot*, the case claims that Defendants'
rules prevent college athletes from receiving "market-value compensation" in violation of
the Sherman Act. *Id.* ¶ 1. The class claims in *Carter* are narrower than *Fontenot*
because the proposed damages class is limited to athletes who competed on a Power
Five Conference or Notre Dame basketball or football team during the relevant period—
a limited subset of schools and sports. *Id.* ¶ 174.

On January 16, 2024, the *Carter* plaintiffs asked the JPML to consolidate the two
cases in the Northern District of California. Defendants supported that request and
made the same arguments they make in the current motion. MDL No. 3105, ECF No. 32
(J.P.M.L. Feb 7, 2024). They repeatedly pointed to other antitrust cases that had
proceeded before Judge Wilken since 2009. *Id.* at 15. And like here, they pointed to that
court's prior protective orders, *id.* at 14, its "developed body of case law," *id.* at 20, the

**OPPOSITION TO DEFENDANTS' MOTION TO TRANSFER**

possibility of sharing discovery from prior cases, *id.*, and their counsel's familiarity with

"that court's local rules, customs, and practices," *id.*

The JPML denied the transfer request. MDL No. 3105, ECF No. 58. The JPML

recognized that the other cases in front of Judge Wilken "differed from" *Fontenot* "in

important ways." *Id.* at 2. The JPML concluded that, "even if neither of the actions is

transferred, informal coordination and cooperation" would be "quite feasible given the

small number of involved actions, parties, and counsel." *Id.*

In recent months, other college athlete cases have begun advancing in other

courts. *Tennessee v. Nat'l Collegiate Athletic Ass'n*, No. 3:24-cv-00033 (E.D. Tenn.)

(NIL-related action); *Brantmeier v. Nat'l Collegiate Athletic Ass'n*, No. 1:24-00238

(M.D.N.C.) (outside pay action). But there are still only two Fair Pay Actions. The

*Fontenot* Plaintiffs moved to transfer the later-filed *Carter* case here under the first-to-

file rule, but that court denied the request. *Carter*, ECF No. 96.

## ARGUMENT

Defendants misconstrue Plaintiffs' position on whether *Carter* and *Fontenot* must

be consolidated. Regardless of what happens in *Carter*, this first-filed action need not

be transferred to San Francisco. Plaintiffs made that clear in JPML briefing, and the

JPML agreed: "even if neither of the actions is transferred, informal coordination and

cooperation" will be "quite feasible given the small number of involved actions, parties,

and counsel." MDL No. 3105, ECF No. 58 at 2. Plaintiffs' counsel has litigated larger

and more complicated cases pending in multiple districts involving extensive

discovery—including after MDL denials—and have experience using master discovery

plans and other agreements to facilitate proceedings. *See Nat'l Credit Union Admin. Bd.*

*v. RBS Sec., Inc.*, No. CV 11-5887-GW (JEMX), 2014 WL 12597071, at *2 (C.D. Cal.

June 10, 2014) (litigated by *Fontenot* counsel, and discussing master discovery plan for

several cases in three districts after JPML's denial of MDL petition); *see also In re:*

*Fresh Dairy Prod. Antitrust Litig. (No. II)*, 959 F. Supp. 2d 1361, 1362 (U.S.J.P.M.L.

2013) (discussing procedures for litigating similar class actions in multiple districts, such

as noticing depositions in all related cases and discovery stipulations).

Indeed, it is not uncommon for two related class actions to proceed in multiple

courts, especially under these circumstances: the classes do not completely overlap

(*Fontenot* is broader, *see supra* at 3) and there is a need to avoid possible prejudice, as

discussed more below. *See Taylor v. Midland Funding, LLC*, 94 F. Supp. 3d 941, 946

(N.D. Ill. 2015) (declining to transfer class action to district where an overlapping class

action was pending); *Jim v. CoreCivic of Tennessee, LLC*, No. CIV 20-0618 JB/JFR,

2021 WL 4990084, at *24 (D.N.M. Oct. 27, 2021) (denying motion to transfer class

action to venue where a similar class action was pending).

As the "party moving to transfer a case pursuant to § 1404(a)" Defendants "bear[]

the burden of establishing that the existing forum is inconvenient." *Scheidt v. Klein*, 956

F.2d 963, 965 (10th Cir. 1992). "This is a heavy burden." *Homewatch Int'l, Inc. v. Pac.*

*Home Care Servs., Inc.*, No. 10-CV-03045-REB-KLM, 2011 WL 1660612, at *1 (D.

Colo. May 2, 2011) (citing *Texas Gulf Sulphur Co. v. Ritter*, 371 F.2d 145, 147 (10th Cir.

1967)). "[U]nless the balance is strongly in favor of the movant the plaintiff's choice of

forum should rarely be disturbed." *Scheidt*, 956 F.2d at 965.

Plaintiffs are "resident[s] of the District of Colorado and the facts giving rise to the

dispute have a significant connection to Plaintiff[s'] chosen forum." *Arrow Elecs., Inc. v.*

**OPPOSITION TO DEFENDANTS' MOTION TO TRANSFER**

*Deco Lighting, Inc.*, No. 18-CV-01100-RM-KLM, 2018 WL 4853338, at *9 (D. Colo. Oct. 5, 2018), *report and recommendation adopted,* 2019 WL 926921 (D. Colo. Feb. 26, 2019). "[U]nless the evidence and circumstances of the case are 'strongly' in favor of transfer, the Plaintiff's choice of forum should not be disturbed." *Id.* All relevant § 1404(a) factors instead favor *this* venue. *See id.* (listing factors).

## I. Plaintiffs' choice of forum favors this venue

Defendants argue (at 13) that Plaintiffs' choice of forum "does not weigh against transfer" because this is a class action. As the case they cite explains, though, even in a class action, Plaintiffs' forum choice is still "entitled to some deference." *See In re Choice Hotels, Inc. Sec. Litig.*, No. 07-cv-00734-REB-BNB, 2008 WL 793621, at *2 (D. Colo. Mar. 24, 2008). The problem in that case was that no named plaintiff resided in Colorado, which lessened the amount of deference to accord.[2]

"[T]he weight accorded to plaintiff's choice of forum in a class action depends on the parties' contacts with the chosen venue." *Pizana v. SanMedica Int'l LLC*, No. 118CV00644DADSKO, 2020 WL 469336, at *3 (E.D. Cal. Jan. 29, 2020) (citing *Senne v. Kansas City Royals Baseball Corp.*, 105 F. Supp. 3d 981, 1059 (N.D. Cal. 2015) (affording plaintiffs, in the class action context, some deference where some named plaintiffs resided in California)). Here, Plaintiffs' connection to the forum is strong: both are Colorado residents, and both suffered their injuries in Colorado. The same can be said for hundreds of other putative class members.

---

[2] Defendants also cite an old Supreme Court case that was not a § 1404(a) case and involved very different factual circumstances. *Koster v. (Am.) Lumbermens Mut. Cas. Co.*, 330 U.S. 518, 520, (1947).

**OPPOSITION TO DEFENDANTS' MOTION TO TRANSFER**

Courts have denied motions to transfer brought by the NCAA under similar circumstances. *See Smart v. Nat'l Collegiate Athletic Ass'n,* No. 123CV00425WBSKJN, 2023 WL 4827366, at *3 (E.D. Cal. July 27, 2023) ("the fact that these named plaintiffs worked in this district overcomes any inference of forum shopping"); *O'Bannon v. Nat'l Collegiate Athletic Ass'n*, No. C 09-3329 CW, 2009 WL 4899217, at *2 (N.D. Cal. Dec. 11, 2009) (denying motion to transfer where plaintiff performed services in California). The NCAA in those cases asked for transfer *out of California* because California was supposedly inconvenient. Defendants have changed their tune now, but the same result applies: Defendants have failed to make the requisite "strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum." *Smart*, 2023 WL 4827366, at *4. Given Plaintiffs' robust connections to this Court, this factor strongly favors Colorado.

## II. Accessibility of witnesses and convenience to parties strongly favors Colorado

This important factor looks at the convenience of the forum to the parties and other witnesses, and like all the factors, the burden is on Defendants. *Arrow Elecs., Inc.,* 2018 WL 4853338, at *6. "To demonstrate inconvenience, the movant must (1) identify the witnesses and their locations; (2) 'indicate the quality or materiality of the[ir] testimony'; and (3) 'show[ ] that any such witnesses were unwilling to come to trial ... [,] that deposition testimony would be unsatisfactory[,] or that the use of compulsory process would be necessary.'" *Emps. Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1169 (10th Cir. 2010) (quoting *Scheidt*, 956 F.2d at 966).

Defendants have made zero attempt to make such a showing. They identify no specific witnesses, fail to describe the needed testimony, and fail to show that key witnesses would not willingly attend trial or that deposition testimony would be insufficient. It is too late for Defendants to try to make that showing on reply, and that

**OPPOSITION TO DEFENDANTS' MOTION TO TRANSFER**

alone is reason to deny the motion. *Id.*; *accord Scheidt*, 956 F.2d at 966 ("Defendant's meager showing failed to demonstrate the requisite inconvenience to his witnesses."); *see also Texas Gulf Sulphur*, 371 F.2d at 147 (saying that a factual affidavit supporting the motion is "very important"); 15 Fed. Prac. & Proc. Juris. § 3851 (4th ed.) (general allegations of inconvenience are insufficient).

At most, Defendants simply state that one Defendant, the Pac-12, is headquartered in California. But they provide no specifics about Pac-12 witnesses. And the Pac-12 has all but collapsed since all but two members have joined other conferences for more money. *See Washington St. Univ., et al., v. Pac-12 Conference, et al.*, No. 23-2-0027338 (Super. Ct. Wash., Sept. 8, 2023) (litigating over conference assets). Very soon, none of its members will be citizens of California, so it too will no longer even be a California citizen. *See Johnson v. Columbia Properties Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006).

On the other hand, all five other Defendants reside much closer to Denver than San Francisco: the NCAA is in Indiana; the Big Ten in Illinois; the Big 12 in Texas; the SEC in Birmingham, Alabama (where there are no nonstop flights to San Francisco but three nonstop flights to Denver); and the ACC in Greensboro, North Carolina (where there are no nonstop flights to San Francisco but one nonstop flight to Denver).[3] And litigating in Denver would be much more convenient for the two named Plaintiffs. Mr.

---

[3] *See* ECF No. 90 at 12 n.3 (listing Defendants' principal places of business). Nonstop flights were identified using Google Flights, *available at* https://www.google.com/travel/flights?gl=US&hl=en-US. Defendants also mention one named plaintiff in *Carter* residing in California—something that should be disregarded since *Carter* is a separate case—but the other two co-plaintiffs in *Carter* actually reside much closer to Colorado: in Durham, North Carolina, and in Fort Worth, Texas.

**OPPOSITION TO DEFENDANTS' MOTION TO TRANSFER**

Fontenot lives in Denver, and his co-plaintiff, Ms. Hollingshed, remains a Colorado resident. *See* ECF No. 78 at ¶¶ 23, 24 (listing residencies); *see also Smart*, 2023 WL 4827366, at \*4 (noting in an NCAA case that a named plaintiff resided in the district).

Beyond the parties, Defendants point generally to five Division I universities located in California. Yet five Division I universities are also located in Colorado. And as Defendant NCAA explained in another case when trying to avoid California as a venue, "The vast majority of NCAA member institutions are found in the Midwest, South or East region of the United States and are closer to Indiana than to California." *Smart*, No. 2:22-cv-02125-WBS-KJN, ECF No. 6 at 9. That means they are also closer to Colorado.

Finally, Defendants claim that more of their "primary counsel" are in California. They cite no case showing that is a relevant factor. It is not. *In re Horseshoe Ent.*, 337 F.3d 429, 434 (5th Cir. 2003) (calling that factor irrelevant); *Congo Works, LLC v. Gray & Co., Inc.*, No. 19-CV-00302-REB-KMT, 2019 WL 13036161, at \*5 (D. Colo. Oct. 10, 2019) (same). They do not list their "primary" counsel, but the signature page disproves the point. Ten of their attorneys practice in Denver. One attorney signing the brief (for the ACC) practices in Denver, and other signatories are in Washington, D.C., Chicago, Dallas, and Charlotte. While two signatories practice in California, this Court would be more convenient for every other attorney on the brief.

Finally, Defendants can hardly complain about litigating in Colorado when they regularly do business here. A year ago, Colorado hosted two rounds of the NCAA's popular March Madness basketball tournament, and it has previously hosted an NCAA

**OPPOSITION TO DEFENDANTS' MOTION TO TRANSFER**

women's basketball Final Four.[4] Colorado has also hosted (or will host) many other
important NCAA championships as well.[5]

"Merely shifting the inconvenience" from some to others is "not a permissible
justification for a change in venue." *Scheidt*, 956 F.2d at 966.This factor is
overwhelmingly one-sided and weighs strongly in favor of Denver over San Francisco.

## III. The cost of proof favors this venue

Defendants argue (at 10) that efficiencies could be gained from litigating in the
Northern District of California. They repeatedly refer to "that district" having experience
with similar cases. But other college athlete cases are proceeding elsewhere. *See supra*
at 2-4. And they use "that district" instead of "that judge" for a reason; the cases
proceeding there were all in front of Judge Wilken, and she declined to accept the
*Carter* case when it was presented to her. *Carter*, ECF No. 29. ("reassignment to me of
the actions currently assigned to another judge is not warranted.") The *Carter* case is
instead proceeding in front of a different judge in a different courthouse in a different
city. Wherever the case proceeds, the judge will be taking a fresh look at these issues.

Defendants also point (at 11) to prior stipulated protective orders and discovery
agreements used in Judge Wilken's cases. That makes no sense. Such stipulations are
portable pieces of paper. Plaintiffs have already requested and received copies of prior
protective orders and agreements that Defendants feel may be suitable to this case; the

---

[4] *NCAA's March Madness men's basketball tournament returning to Denver this
weekend*, KUNC (Mar. 17, 2023), *available at* https://www.kunc.org/news/2023-03-
17/ncaas-march-madness-mens-basketball-tournament-returning-to-denver-this-
weekend (last visited Feb. 2, 2024).

[5] *Host Sites*, NCAA.com, *available at* https://www.ncaa.com/_flysystem/public-
s3/files/Host%20Sites%202022-2026_1.pdf (last visited Feb. 2, 2024).

**OPPOSITION TO DEFENDANTS' MOTION TO TRANSFER**

parties are conferring over them, just as they would wherever the case proceeds. As Defendants concede (at 11), this Court is just as capable of navigating issues of privacy as the new judge overseeing *Carter*. And while Defendants will likely point to the fact that the *Carter* court appointed a magistrate judge who has worked on prior NCAA cases to oversee discovery, the protective orders and discovery agreements discussed in their opening brief were all signed by Judge Wilken—not the magistrate judge. And the magistrate judge will not decide substantive issues.

The first-to-file rule also supports keeping the case here. While it is a matter of discretion, this rule "should not be disregarded lightly." *Wallace B. Roderick Revocable Living Tr. v. XTO Energy, Inc.*, 679 F. Supp. 2d 1287, 1297 (D. Kan. 2010). Defendants argue (at 9) that *Fontenot* "is not the true 'first' action." Among the two pending Fair Pay Cases, however, there is no doubt that *Fontenot* was filed first. Defendants argue that *Carter* was filed just a few *weeks* later. But courts in this District have applied the rule to cases filed on the same or next *day*. *See Masciotra v. Vertafore, Inc.*, No. 20-CV-3603-WJM-NYW, 2021 WL 1720860, at *2 (D. Colo. Apr. 30, 2021) ("To the extent Plaintiff contests transfer based on the fact that the two actions were filed a mere four days apart, his argument is unavailing. … [T]he undersigned has applied the first-to-file rule to cases filed on the same day."); *see also Alltrade, Inc. v. Uniweld Prod., Inc.*, 946 F.2d 622, 624 (9th Cir. 1991) (applying the rule to a case filed "[a] day later").

Defendants point to *Rogers v. Elder*, No. 21-cv-01278-NRN, 2022 WL 348470, at *4 (D. Colo. Jan. 5, 2022). But that case supports Plaintiffs. The key issue in *Rogers* was that the other case pointed to had already been dismissed, so the first-to-file rule did not apply. *Id.* The court explained that the first-to-file rule "applies to parallel,

**OPPOSITION TO DEFENDANTS' MOTION TO TRANSFER**

*pending* lawsuits." Defendants therefore err when pointing to closed cases like *Alston*, which are not considered under the first-to-file rule. Just the pending cases of *Fontenot* and *Carter* should be considered. *Id.*

And as the JPML recognized (MDL No. 3105, ECF No. 58 at 2), the cases in front of Judge Wilken materially differ from this one. Defendants argue that *Fontenot* is a "revival" of the claims in the now-closed *Alston* case that eventually made its way to the Supreme Court in 2021. *See Nat'l Collegiate Athletic Ass'n v. Alston*, 594 U.S. 69 (2021). They admit (at 2), however, that *Alston* was a case about "educational achievement" awards. They also admit (at 3) that the currently pending *Hubbard* case is the real continuation of *Alston* because it also involves (unlike here) education-related "payments permitted by *Alston*." And they admit (at 2) that the *House* case focuses on payments for use of NILs—a different and much narrower theory case than this one, which takes aim at the full cut of revenue that these athletes "would receive in a truly open market." ECF No. 78 at ¶ 102.

Defendants have failed to show that litigating here will be costlier or less efficient. *See Texas Gulf Sulphur*, 371 F.2d at 147 (affirming denial of transfer over argument that "nearly 100 cases arising from the same factual background … are now pending in … New York"). Most efficiencies that could have been gained by litigating in California disappeared when Judge Wilken declined to accept *Carter*. In fact, and as explained *supra*, more witnesses are located closer to Colorado with a greater availability of flights to Denver, so litigating here will be less costly. And as explained *infra*, if transferred to California, Plaintiffs will be forced to inefficiently fend off arguments that would have no application if this case remained here. This factor favors Colorado.

**OPPOSITION TO DEFENDANTS' MOTION TO TRANSFER**

## IV.    Court congestion strongly favors this venue

This District has a greater capacity to oversee this case than the Northern District of California. While Defendants focus on one isolated statistic—weighted recent *filings* rather than overall pending cases—the complete data paint a clear picture. The Northern District of California is overseeing *17 MDLs*, more than any other district.[6] As of December, it had over 14,000 cases pending for 14 Article III judgeships—resulting in one of the highest number of pending cases per judgeship in the country. *See U.S. District Court—Judicial Caseload Profile*, USCourts.gov, *available at* https://www.uscourts.gov/sites/default/files/fcms_na_distprofile1231.2023_0.pdf. The median time from filing to trial in civil cases is 48.9 months. *Id.* It has nearly 3,000 civil cases that are over 3 years old (over 20% of pending civil cases). *Id.*

This Court is undoubtedly congested too, but it now has all vacancies filled. And its numbers simply do not approach those of the Northern District of California's. With 3,744 pending cases for 7 judgeships, it is overseeing 535 cases per judgeship (around half that of the Northern District of California). *Id.* The median time from filing to trial in civil cases is 20 months shorter, at 28.9 months, and just 223 civil cases are over three years old, resulting in 7% of civil cases as compared to over 20%. *Id.*

The Northern District of California is one of the most back-logged courts in the country. There is no need to send (and slow down) yet another antitrust action there.

---

[6] *MDL Statistics Report-Distribution of Pending MDL Dockets by District*, JPML, *available at* https://www.jpml.uscourts.gov/sites/jpml/files/Pending_MDL_Dockets_By_District-April-1-2024.pdf (last visited Apr. 24, 2024).

**OPPOSITION TO DEFENDANTS' MOTION TO TRANSFER**

**V. Keeping this first-filed case here avoids prejudice to Plaintiffs and the class**

This case should also remain here to ensure that Plaintiffs and the class are not

bogged down by legal arguments that will be raised in *Carter* but have no application to

*Fontenot*. For instance, Defendants plan to argue that plaintiffs improperly split their

claims between *House* and *Carter*/*Fontenot*. ECF No. 90 at 7. They will likely point out

that *Carter* and *House* share the same counsel and share a named plaintiff. But that

argument would be dead-on-arrival in *Fontenot* because this case (unlike *Carter*)

involves different named plaintiffs and different counsel. Indeed, "the rule against claim

splitting does not apply when a member of a class subsequently seeks to pursue a

claim that was not litigated in the class action." *Rodriguez v. Taco Bell Corp.*, No. 1:13-

CV-01498-SAB, 2013 WL 5877788, at *3 (E.D. Cal. Oct. 30, 2013); *see also Makor

Issues & Rts., Ltd. v. Tellabs, Inc.*, 256 F.R.D. 586, 597 (N.D. Ill. 2009) (quoting 18

Moore's Federal Practice § 131.40[3][e][iii] (2002) ("This type of action, of course, is one

of the recognized exceptions to the rule against claim splitting.").

Relatedly, Defendants have also already begun pointing to perceived conflicts

stemming from *House* and *Carter* having the same counsel. *See Carter*, ECF No. 87 at

8-9. They will undoubtedly scour the record to try to identify inconsistent positions being

taken by *Carter*'s counsel—and they will apply those arguments to *Fontenot* if it is

consolidated and if *Carter*'s counsel is named lead. The dual representation would lead

to ornery conflicts issues since *Carter*'s counsel has made decisions in *House* (such as

the amount of revenue that should be attributed to NIL or to certain sports versus

others) that may not be in the best interest of the *Fontenot* class—a potential conflict

that should be avoided. *See, e.g.*, *Halman Aldubi Provident & Pension Funds Ltd. v.*

**OPPOSITION TO DEFENDANTS' MOTION TO TRANSFER**

*Teva Pharm. Indus. Ltd.*, 529 F. Supp. 3d 385, 400–01 (E.D. Pa. 2021) (finding conflict of interest under similar circumstances). The same can be said of potential settlement discussions. Media reports indicate that Defendants are discussing a broad potential settlement with counsel for *Carter*/*House*.[7] Given the money involved, counsel for *Carter*/*House* may be incentivized to settle both cases at once despite the obvious conflicts that would arise when trying to do so. This case should remain separate to ensure *Fontenot* is not consolidated with *Carter*, which will in turn ensure adequate and unconflicted representation of *Fontenot* class members.

All of this may explain why Defendants seek to transfer this case to California after trying to avoid the state for over a decade. If this case is transferred and consolidated, they can raise arguments regarding claim splitting and other issues that would go nowhere here. And of course, they can try to reach a settlement with the same counsel for all cases rather than dealing with independent counsel. To avoid prejudice to these Colorado Plaintiffs and the class, and to prevent the case from being weighed down by arguments that have no application to it, this case should remain here.

## CONCLUSION

For over a decade, Defendants have tried to avoid litigating in California, arguing for transfer in multiple cases, and discussing the inconveniences of proceeding there. No matter the reason for their current about-face, their motion utterly fails to meet their "heavy burden" under § 1404(a). All relevant factors point to the case proceeding here, and so does the first-to-file rule. The case should remain in this Court.

---

[7] *College sports leaders in deep talks to settle NIL antitrust case vs. NCAA*, ESPN (Apr. 29, 2024), https://www.espn.com/college-sports/story/_/id/40053021/college-sports-leaders-deep-talks-settle-nil-antitrust-case-vs-ncaa.

DATED: May 3, 2024

By: /s/ *Garrett R. Broshuis*
STEPHEN M. TILLERY *(admission forthcoming)*
stillery@koreintillery.com
GARRETT R. BROSHUIS
gbroshuis@koreintillery.com
CAROL O'KEEFE
cokeefe@koreintillery.com
**KOREIN TILLERY, LLC**
505 North 7th Street, Suite 3600
St. Louis, MO 63101
Telephone: (314) 241-4844
Facsimile: (314) 241-3525

GEORGE A. ZELCS
gzelcs@koreintillery.com
MARC A. WALLENSTEIN
mwallenstein@koreintillery.com
**KOREIN TILLERY, LLC**
205 N. Michigan Ave., Suite 1950
Chicago, IL 60601
Telephone: (312) 641-9750

CHRISTOPHER M. BURKE *(admission forthcoming)*
cburke@koreintillery.com
**KOREIN TILLERY, LLC**
707 Broadway, Suite 1410
San Diego, CA 92101
Telephone: (619) 625-5620

SEAN GRIMSLEY
sgrimsley@olsongrimsley.com
ERIC OLSON
eolson@olsongrimsley.com
JASON MURRAY
jmurray@olsongrimsley.com
ABIGAIL HINCHCLIFF
ahinchcliff@olsongrimsley.com
**OLSON GRIMSLEY KAWANABE
HINCHCLIFF & MURRAY LLC**
700 17th Street, Suite 1600
Denver, CO 80202
Telephone: (303) 535-9151

*Attorneys for Plaintiff*

**OPPOSITION TO DEFENDANTS' MOTION TO TRANSFER**

## CERTIFICATE OF SERVICE

I hereby certify that on May 3, 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all attorneys of record registered for electronic filing.

/s/ *Garrett R. Broshuis*
Garrett R. Broshuis

**OPPOSITION TO DEFENDANTS' MOTION TO TRANSFER**