# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Case No. 1:23-cv-03076-CNS-STV

ALEX FONTENOT and
MYA HOLLINGSHED, Individually and on Behalf of All
Those Similarly Situated,

      Plaintiff,

v.

NATIONAL COLLEGIATE ATHLETIC ASSOCIATION;
SOUTHEASTERN CONFERENCE;
PAC-12 CONFERENCE;
THE BIG TEN CONFERENCE, INC.;
THE BIG TWELVE CONFERENCE, INC.; and
ATLANTIC COAST CONFERENCE,

      Defendants.

**DEFENDANTS' REPLY IN SUPPORT OF
MOTION TO TRANSFER UNDER 28 U.S.C. § 1404(a)**

## TABLE OF CONTENTS

I.  ARGUMENT ...................................................................................................... 1

    A.  Plaintiffs Misrepresent the JPML Proceedings ...................................................... 1

    B.  Plaintiffs Ignore the Inefficiency and Inconsistency Risks of Litigating the Same Case in Two Different Forums ........................................................................... 2

    C.  The Accessibility of Parties and Witnesses Favors Transfer ............................... 5

    D.  Plaintiffs' Choice of Forum Does Not Receive Strong Deference ....................... 6

    E.  The First-to-File Rule Does Not Counsel Against Transfer ................................. 7

    F.  Transfer Will Not Prejudice Plaintiffs ................................................................. 9

II.  CONCLUSION ............................................................................................... 10

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Bank of Colo. v. Wilbaux 1, LLC*,
  No. 17-cv-02871-CMA-SKC, 2018 WL 4538788 (D. Colo. Sept. 21,
  2018) ................................................................................................................................. 3

*Bojorquez v. Abercrombie & Fitch, Co.*,
  193 F. Supp. 3d 1117 (C.D. Cal. 2016) ................................................................................. 9

*Dumanian v. Schwartz*,
  No. 20-CV-01800-PAB-MEH, 2021 WL 1210033 (D. Colo. Mar. 31,
  2021) ................................................................................................................................. 8

*Employers Mut. Cas. Co. v. Bartile Roofs, Inc.*,
  618 F.3d 1153 (10th Cir. 2010) ......................................................................................... 10

*Ests. of Von Coley v. Hillenbrand Indus., Inc.*,
  No. CIV-06-1190-R, 2007 WL 9711023 (W.D. Okla. Feb. 21, 2007) .................................. 6, 7

*Hernandez v. Asset Acceptance, LLC*,
  970 F. Supp. 2d 1194 (D. Colo. 2013) .................................................................................. 9

*Jensen v. Secorp Indus.*,
  No. 2:19-CV-07980-RGK-GJS, 2019 WL 8064603 (C.D. Cal. Dec. 9,
  2019) ................................................................................................................................. 9

*Jim v. CoreCivic of Tenn., LLC*,
  No. Civ 20-0618 ................................................................................................................. 3

*King v. Union Oil Co. of California*,
  117 F.3d 443 (10th Cir. 1997) ............................................................................................. 9

*Koster v. (Am.) Lumbermens Mut. Cas. Co.*,
  330 U.S. 518 (1947) ............................................................................................................ 7

*Papaleo v. Cingular Wireless Corp.*,
  No. C-07-1234 MMC, 2007 WL 1238713 (N.D. Cal. Apr. 26, 2007) ..................................... 5

*Papasan v. Dometic Corp.*,
  No. 16-cv-02117-HSG, 2018 WL 1367341 (N.D. Cal. Mar. 16, 2018) ................................... 8

*Pizana v. SanMedica Int'l LLC*,
   No. 1:18-cv-00644-DAD-SKO, 2020 WL 469336 (E.D. Cal. Jan. 29,
   2020) ................................................................................................................. 7

*Res. Inv. Corp. v. Hughes Tool Co.*,
   561 F. Supp. 1236 (D. Colo. 1983) ...................................................................... 3

*Ret. Sys. v. MGIC Inv. Corp.*,
   604 F. Supp. 2d 969 (E.D. Mich. 2009) ................................................................ 8

*Taylor v. Midland Funding, LLC*,
   94 F. Supp. 3d 941 (N.D. Ill. 2015) ....................................................................... 3

*Wakaya Perfection, LLC v. Youngevity Int'l Inc.*,
   910 F.3d 1118 (10th Cir. 2018) ............................................................................ 7

**iii**

Plaintiffs' Opposition (the "Opposition"), ECF No. 97, to Defendants' Motion to Transfer Under 28 U.S.C. § 1404(a) (the "Motion"), ECF No. 90, fails to overcome the significant judicial efficiencies gained from transfer of this action to the Northern District of California. The Judicial Panel on Multidistrict Litigation ("JPML") already held that *Carter* and *Fontenot* are effectively the same and should be litigated together, perhaps through a Section 1404 motion. ECF No. 87 at 2. Likewise, the *Carter* court, in denying Plaintiffs' motion to transfer the *Carter* case to this Court, rejected Plaintiffs' "strained application of the first-to-file rule" and recognized the value of litigating the cases in California. ECF No. 91-1 at 2. Plaintiffs' Opposition simply ignores these efficiencies and the need to avoid inconsistent judgments. *Carter* is proceeding in California, regardless of the outcome of this Motion. Yet, Plaintiffs offer no solution to this problem, other than gesturing at unspecified "informal" coordination. Plaintiffs also (wrongly) argue that transfer will result in this case getting "bogged down" by arguments applicable to *Carter* but not *Fontenot*. Not so. Those arguments apply equally to this case, and should be addressed in a single court. For the reasons explained below and in Defendants' Motion, this Court should grant the Motion to Transfer.

## I.     ARGUMENT

### A.     Plaintiffs Misrepresent the JPML Proceedings

Plaintiffs' Opposition mischaracterizes the Motion as "recycl[ing]" arguments that the JPML already rejected. *See* ECF No. 97 at 1, 4. But whether cases should be centralized under Section 1407 is a separate question from whether a case should be transferred under Section 1404. If anything, the JPML's ruling *supports* transfer. The

1

JPML expressly recognized the significant overlap between *Carter* and *Fontenot* and denied centralization partly because "there appears to be some prospect that Section 1404 transfer could eliminate the multidistrict character of this litigation." *Id.* at 1-2 (noting the undisputed "common questions of fact" arising from overlapping allegations in *Carter* and *Fontenot* and flagging that both "complaints identify the same alleged relevant market . . . and propose overlapping nationwide classes"). The JPML also acknowledged the overlap between *House*, *Carter*, and *Fontenot*—further supporting the judicial efficiencies gained by transfer—and noted that "[r]esolution of the *House* action may well drive resolution" of *Carter* and *Fontenot*. *Id.* at 2.[1]

### B. Plaintiffs Ignore the Inefficiency and Inconsistency Risks of Litigating the Same Case in Two Different Forums

#### 1. Carter and Fontenot Should Be Litigated Together

*Carter* will be litigated in the Northern District of California. *See* ECF No. 91-1 (N.D. Cal. order denying transfer). Judge Seeborg has already decided that question. The only remaining question is whether *Carter* and *Fontenot* will be litigated separately (in California and Colorado) or together (in California). As Plaintiffs told the *Carter* court, litigating these virtually identical cases together would be more efficient. *Carter*, ECF No. 84 at 1 (arguing that it would be "[i]n the interest of preserving judicial resources" to transfer *Carter* and *Fontenot* to the same District); *id.* at 6 (arguing that transfer would

---

[1] Contrary to Plaintiffs' representation, the JPML did not opine that the related actions pending in the Northern District of California—namely, *House* and *Hubbard*—"materially differ" from *Carter* and *Fontenot*. ECF 97 at 1. Plaintiffs appear to confuse *House* and *Hubbard* with *Brantmeier* and *Bewley*; the JPML's discussion of "important" differences from *Carter* and *Fontenot* related only to the latter cases. *See* ECF No. 87 at 2 n.1.

**2**

"promote efficiency"). Judge Seeborg agrees. *See* ECF No. 91-1 at 2 n.1 ("It very well may be the case that judicial efficiency and economy would be best served if *Fontenot* and this case were litigated together . . . ."). And for good reason—it would undoubtedly waste judicial and party resources to litigate nearly identical class actions halfway across the country from one another. "Having two courts across two states assess the same evidence" will "result in unnecessary delay and substantial inconvenience and expense to the parties and witnesses." *Bank of Colo. v. Wilbaux 1, LLC*, No. 17-cv-02871-CMA-SKC, 2018 WL 4538788, at *4 (D. Colo. Sept. 21, 2018).

Plaintiffs now reverse the position they took in *Carter*. Plaintiffs' briefing is mostly silent on the inefficiency of litigating effectively the same case in two different venues. Their only response is to provide detail-free assurances that "informal" coordination will suffice. *See* Opp. at 4-5. But there is no need to rely on informal coordination when Section 1404 transfer—precisely the alternative that the JPML contemplated and implicitly encouraged the transferee courts to consider, ECF No. 87 at 2—is readily available and appropriate.[2] What is more, Plaintiffs' Opposition is silent on the significant risk of inconsistent rulings that Defendants outlined in their Motion. *See* Mot. at 6-8. The risk of inconsistent judgments alone justifies granting the Motion. *See Res. Inv. Corp. v. Hughes Tool Co.*, 561 F. Supp. 1236, 1238 (D. Colo. 1983).

---

[2] The cases that Plaintiffs cite as examples of courts refusing to transfer overlapping class actions involved far different circumstances not applicable here. *See, e.g.*, *Taylor v. Midland Funding, LLC*, 94 F. Supp. 3d 941 (N.D. Ill. 2015) (denying transfer where it would not conserve judicial resources because defendant sought transfer of only part of the case, so the remainder of the case would continue in the existing district); *Jim v. CoreCivic of Tenn., LLC*, No. Civ 20-0618 JB/JFR, 2021 WL 4990084, at *24 (D.N.M. Oct. 27, 2021) (denying transfer because neither the parties nor the claims overlapped).

3

### 2. Litigating in the Northern District of California Will Benefit from that District's Long History with Related Cases

Transfer is also in the interests of justice given the Northern District of California's long history with related cases. Plaintiffs attempt to minimize the benefits transfer will provide, emphasizing that Judge Wilken presided over the earlier-filed related cases (*O'Bannon*, *Alston, House*, and *Hubbard*), whereas Judge Seeborg is presiding over *Carter* (and presumably *Fontenot*). *See* Opp. at 10-12. Judge Seeborg rejected that argument, highlighting that "compensation and benefits for NCAA student-athletes, and the application of antitrust law to that issue, has been the subject of ongoing litigation originating in this district for several years," and explaining that all discovery matters in *Carter* (and presumably *Fontenot*) would be referred to "the same Magistrate Judge who has, from the outset, handled discovery issues in that long standing and ongoing Northern District litigation." ECF No. 91-1 at 2. That Magistrate Judge has resolved the parties' discovery disputes in the prior related actions on multiple occasions and therefore is better positioned to decide any future discovery disputes. *See House*, ECF Nos. 282, 374, 388; *Alston*, ECF Nos. 536, 575, 753; *O'Bannon*, ECF No. 12.

While Plaintiffs try to downplay the value of being in a District where the parties have litigated related issues for years, suggesting that the parties could simply copy and paste orders from the Northern District of California into this case, it is not so simple. The Northern District of California has the advantage of familiarity and efficiency in applying the protocols, and the third parties who have produced information subject to those protective orders have the comfort of knowing that those orders will not be subject to new interpretations or a different application by a different court. Trying to import those

4

agreements into a different district inevitably would yield issues and require adjustments lacking the pre-approval of numerous affected third parties, all of whom will need to be involved in determining the terms of any revised protective order. Plaintiffs offer no good reason to introduce such complications into an already complex matter. The Court could and should avoid those issues by ordering transfer to the Northern District of California.

### C.     The Accessibility of Parties and Witnesses Favors Transfer

Litigating this case in the Northern District of California will be more accessible to the parties and the witnesses given that they are already litigating several related matters there and transfer will facilitate coordination. The court might, for example, coordinate hearing dates, and "witnesses would not be required to engage in duplicative litigation or travel to two different forums to attend court proceedings." *Papaleo v. Cingular Wireless Corp.*, No. C-07-1234 MMC, 2007 WL 1238713, at *2 (N.D. Cal. Apr. 26, 2007). Given the conceded overlap between this case and *Carter*, an affidavit to show that it will be more convenient for witnesses if the litigation is in a single District is unnecessary.

Plaintiffs' long list of assertions about the purported availability of flights from one place to another misses the mark. Opp. at 8-9. Related litigation will proceed in California regardless of this Court's decision. So, to the extent travel is necessary, the choice is not between travel to California or travel to Colorado, as Plaintiffs' argument supposes; the choice is between travel to California *and* Colorado, or travel to only California. The more accessible, more efficient choice is obvious.

Moreover, Plaintiffs' only response to the argument that one of the Defendants (the Pac-12) is located in California—unquestionably making California more convenient—

**5**

whereas none are in Colorado, is that the Court should ignore the Pac-12 because (Plaintiffs say) it has "all but collapsed." Opp. at 8. Plaintiffs' speculation about future events is not evidence, and the Pac-12 continues to actively participate in the defense of these matters. Thus, witnesses and other sources of proof may be more available in California than in Colorado.

Plaintiffs' argument that Defendants can "hardly complain" about litigating in this District because the NCAA occasionally hosts sporting events in this District, Opp. at 9-10, confuses the relevant inquiry for personal jurisdiction with the convenience analysis under Section 1404. Defendants' argument is not that this District lacks personal jurisdiction, but rather that litigating this case here, while all of the related cases are litigated in the Northern District of California, is inconvenient and inefficient for both the parties and the Court. This factor weighs in favor of transfer.[3]

### D. Plaintiffs' Choice of Forum Does Not Receive Strong Deference

Plaintiffs argue that their choice of forum should receive strong deference because their "connection to the [District of Colorado] is strong." Opp. at 6. But Plaintiffs disregard the law in this District holding that "[c]ourts traditionally give less deference to a plaintiff's chosen forum in a class action lawsuit," *Ests. of Von Coley v. Hillenbrand Indus., Inc.*, No. CIV-06-1190-R, 2007 WL 9711023, at *2 (W.D. Okla. Feb. 21, 2007), and the out-of-

---

[3] That the NCAA has, in other cases involving different situations, argued that California is a less convenient venue in those circumstances, Opp. at 7, says nothing about the convenience of California as a forum in *this case*, where related cases are pending and have been litigated in that District for years.

**6**

Circuit district court authority Plaintiffs cite is inapposite.[4]

Plaintiffs fail to engage with the reasons that proposed class representatives' choice of forum receives less deference. First, it is unlikely that Plaintiffs' testimony will "occupy a substantial position" in this trial, considering they are single-named plaintiffs purporting to represent hundreds of thousands of potential nationwide class members. *Von Coley*, 2007 WL 9711023, at *2. Second, as the Supreme Court explained, "where there are hundreds of potential plaintiffs . . . the claim of any one plaintiff that a forum is appropriate merely because it is his home forum is considerably weakened." *Koster v. (Am.) Lumbermens Mut. Cas. Co.*, 330 U.S. 518, 524 (1947). Plaintiffs respond only by calling *Koster* an "old" case that involved "very different factual circumstances" (without further explanation). Opp. at 6 n.2. Based on caselaw from this Court and the Supreme Court, any deference to Plaintiffs' chosen forum to litigate this class action is minimal.

### E.   The First-to-File Rule Does Not Counsel Against Transfer

As the *Carter* court found, Plaintiffs' application of the first-to-file rule is "strained," including because "the short duration of time between the two filings (17 days) greatly diminishes the import of the first-to-file rule and the interests it otherwise might serve." ECF No. 91-1 at 1, 2 n.1. The first-to-file rule is a discretionary doctrine. ECF No. 97 at 11 (Plaintiffs agreeing the rule is discretionary). It is, at best, "a starting point," after which the court should also consider "equitable factors" that "may bear on the inquiry." *Wakaya*

---

[4] Multiple factors weighed against transfer in the case that Plaintiffs cite, including that the defendant sought to transfer California state law claims to a Utah court. *Pizana v. SanMedica Int'l LLC*, No. 1:18-cv-00644-DAD-SKO, 2020 WL 469336, at *3 (E.D. Cal. Jan. 29, 2020). Additionally, unlike in this case, there was no related case pending in the proposed transferee court.

**7**

*Perfection, LLC v. Youngevity Int'l Inc.*, 910 F.3d 1118, 1124 (10th Cir. 2018).

Here, those equitable factors weigh strongly in favor of transfer, particularly given (as Judge Seeborg recognized) "the short duration of time between the two filings," ECF No. 91-1 at n.1, the fact that both cases have not progressed to different stages, and the substantial overlap between them. In this context, transfer best serves the interests of justice and convenience of the parties. Courts have ordered transfer of a first-filed case in precisely these circumstances. *See, e.g.*, *Wayne Cnty. Emps.' Ret. Sys. v. MGIC Inv. Corp.*, 604 F. Supp. 2d 969, 977 (E.D. Mich. 2009) (ordering transfer of first-filed case where there was "no question that the discovery will overlap, if it is not duplicative" and the classes would "likely will include the same members"); *Papasan v. Dometic Corp.*, No. 16-cv-02117-HSG, 2018 WL 1367341, at *3-4 & n.5 (N.D. Cal. Mar. 16, 2018) (ordering transfer of first-filed case and rejecting argument that transfer was "inappropriate under the 'first to file' rule").[5] This Court should do the same.

Second, Plaintiffs' suggestion that this case is "first filed" requires the Court to ignore the related cases pending in the Northern District of California, because Plaintiffs claim they were not "Fair Pay Cases." But Plaintiffs cite no authority for their position that the cases must be identical for the first-filed rule to apply. In fact, the cases need only be "substantially similar," not identical. *Dumanian v. Schwartz*, No. 20-CV-01800-PAB-MEH, 2021 WL 1210033, at *4 (D. Colo. Mar. 31, 2021). As judges in both the JPML and the Northern District of California have recognized, the issues in this case are substantially similar to the issues that have been (and are being) litigated in the Northern District of

---

[5] Plaintiffs do not even attempt to distinguish those cases.

**8**

California for years—specifically, whether the NCAA's restrictions on compensation for student-athletes violates federal antitrust laws. See ECF No. 87 at 2; ECF No. 91-1; *Carter*, ECF No. 29. So to the extent the first-filed rule carries any weight at all, it counsels in favor of transfer.

### F. Transfer Will Not Prejudice Plaintiffs

Finally, Plaintiffs argue that transfer will cause this case to get "bogged down" by Defendants' expected claim-splitting arguments that "have no application to *Fontenot*." Opp. at 14. But Defendants' argument applies equally to *Fontenot*. Defendants may detail their argument in a motion to dismiss at the appropriate time and in the appropriate forum, but in short, bringing successive antitrust claims against the same Defendants based on the same set of allegedly anticompetitive rules is impermissible under res judicata and claim-splitting principles, regardless of whether or not those cases are brought by the same plaintiffs' counsel. See *King v. Union Oil Co. of California*, 117 F.3d 443, 445 (10th Cir. 1997); *Hernandez v. Asset Acceptance, LLC*, 970 F. Supp. 2d 1194, 1201 (D. Colo. 2013). Class action plaintiffs cannot evade those principles by having a different representative plaintiff (or different plaintiffs' counsel) bring the suit. Indeed, federal courts routinely apply the claim-splitting rule in class actions. See, e.g., *Jensen v. Secorp Indus.*, No. 2:19-CV-07980-RGK-GJS, 2019 WL 8064603, at *2 (C.D. Cal. Dec. 9, 2019) (noting "several cases have applied the rule against claim-splitting to class actions"); *Bojorquez v. Abercrombie & Fitch, Co.*, 193 F. Supp. 3d 1117, 1123–24 (C.D. Cal. 2016) (holding plaintiff was a party to a previous class action where she had been a certified member of the class).

That argument is not currently before the Court, but the point is that they are not *Carter*-specific arguments. Plaintiffs will need to address the same claim-splitting argument even if this case remains here. And because the Northern District of California will have to decide the same question, it would be in the interests of justice to have the issue decided in a single forum.

Last, Plaintiffs point to "perceived conflicts stemming from *House* and *Carter* having the same counsel," and purported concern about "ensur[ing] adequate and unconflicted representation" of class members. Opp. at 14-15. Again, this is not an argument against transfer. The putative *Fontenot* class overlaps almost entirely with the putative *Carter* class, so *Fontenot*'s counsel is likely to make these arguments in a motion to appoint class counsel regardless of where the cases are pending. The putative class would best be served by litigating these and other issues in a single forum, reaping the efficiency and consistency benefits described in the Motion and above, rather than spending time and money on unnecessary and duplicative satellite litigation.[6]

## II.   CONCLUSION

For the foregoing reasons, Defendants request that the Court transfer this action to the Northern District of California pursuant to 28 U.S.C. § 1404(a).

---

[6] Plaintiffs also argue that court congestion "strongly favors this venue," cherry-picking statistics favorable to their position. Opp. at 13. However, "the most relevant statistics are the median time from filing to disposition, median time from filing to trial, pending cases per judge, and average weighted filings per judge." *Employers Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1169 (10th Cir. 2010). At least two of those factors favor the Northern District of California. *See* Admin. Off. of the United States Cts., Fed. Ct. Mgmt. Statistics (December 2023) (median time from filing to deposition: 6.9 months (N.D. Cal.) and 8.3 months (D. Colo.); average weighted filings: 486 (N.D. Cal.) and 598 (D. Colo.)). Thus, this factor is, at most, neutral.

Dated:  May 10, 2024

Respectfully Submitted,

**WILKINSON STEKLOFF LLP**

By: */s/ Rakesh N. Kilaru*
Rakesh N. Kilaru
Calanthe Arat
Tamarra Matthews Johnson
2001 M Street NW, 10th Floor
Washington, DC 20036
Telephone:  (202) 847-4000
Facsimile:  (202) 847-4005
rkilaru@wilkinsonstekloff.com
carat@wilkinsonstekloff.com
tmatthewsjohnson@wilkinsonstekloff.com

*Attorneys for Defendant*
*National Collegiate Athletic Association*

**LATHAM & WATKINS LLP**

By: */s/ Christopher S. Yates*
Christopher S. Yates
Aaron T. Chiu
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
Telephone:  (415) 391-0600
Facsimile:  (415) 395-8095
chris.yates@lw.com
aaron.chiu@lw.com

Anna M. Rathbun
555 Eleventh Street, NW, Suite 1000
Washington, DC 20004
Telephone:  (202) 637-3381
Facsimile:  (202) 637-2201
anna.rathbun@lw.com

**KING & SPALDING LLP**

Cliff Stricklin
Jared Michael Lax
1401 Lawrence Street, Suite 1900
Denver, CO 80202
Telephone:  (720) 535-2327
cstricklin@kslaw.com
jlax@kslaw.com

*Attorneys for Defendant*
*The Atlantic Coast Conference*

| | |
|---|---|
| **MAYER BROWN LLP**<br><br>By: */s/ Britt M. Miller*<br>Britt M. Miller<br>Daniel T. Fenske<br>71 South Wacker Drive<br>Chicago, IL 60606<br>Telephone: (312) 782-0600<br>Facsimile: (312) 701-7711<br>bmiller@mayerbrown.com<br>dfenske@mayerbrown.com<br><br>**BROWNSTEIN HYATT FARBER SCHRECK LLP**<br><br>Richard B. Benenson<br>675 15th Street, Suite 2900<br>Denver, CO 80202<br>Telephone: (303) 223-1100<br>Facsimile: (303) 223-1111<br>rbenenson@bhfs.com<br><br>*Attorneys for Defendant*<br>*The Big Ten Conference, Inc.* | **SIDLEY AUSTIN LLP**<br><br>By: */s/ Angela C. Zambrano*<br>Angela C. Zambrano<br>Natali Wyson<br>2021 McKinney Avenue, Suite 2000<br>Dallas, TX 75201<br>Telephone: (214) 969-3529<br>Facsimile: (214) 969-3558<br>angela.zambrano@sidley.com<br>nwyson@sidley.com<br><br>**LEWIS ROCA ROTHGERBER CHRISTIE LLP**<br><br>Abby Caroline Harder<br>Douglas B. Tumminello<br>1601 19th Street, Suite 1000<br>Denver, CO 80202<br>Telephone: (303) 628-9575<br>Facsimile: (303) 623-9222<br>aharder@lewisroca.com<br>dtumminello@lewisroca.com<br><br>*Attorneys for Defendant*<br>*The Big 12 Conference, Inc.* |

<div style="columns:2">

**COOLEY LLP**

By: /s/ *Whitty Somvichian*
Whitty Somvichian
Kathleen R. Hartnett
Ashley Kemper Corkery
Gregory John Merchant
Mark Frederick Lambert
Rebecca Lynne Tarneja
3 Embarcadero Center, 20th Floor
San Francisco, CA 94111-4004
Telephone: (415) 693-2000
Facsimile: (415) 693-2222
wsomvichian@cooley.com
khartnett@cooley.com
acorkery@cooley.com
gmerchant@cooley.com
mlambert@cooley.com
rtarneja@cooley.com

*Attorneys for Defendant Pac-12 Conference*

**ROBINSON, BRADSHAW & HINSON, P.A.**

By: /s/ *Robert W. Fuller*
Robert W. Fuller, III
Lawrence C. Moore, III
Amanda P. Nitto
Travis S. Hinman
Patrick H. Hill
101 N. Tryon St., Suite 1900
Charlotte, NC 28246
Telephone: (704) 377-2536
Facsimile: (704) 378-4000
rfuller@robinsonbradshaw.com
lmoore@robinsonbradshaw.com
anitto@robinsonbradshaw.com
thinman@robinsonbradshaw.com
phill@robinsonbradshaw.com

**WHEELER TRIGG O'DONNELL LLP**

Michael L. O'Donnell
Kathryn A. Reilly
Michael T. Williams
Michael R. Krantz
370 17th Street, Suite 4500
Denver, CO 80202-5647
Telephone: (303) 244-1867
Facsimile: (303) 244-1879
odonnell@wtotrial.com
reilly@wtotrial.com
williams@wtotrial.com
krantz@wtotrial.com

*Attorneys for Defendant Southeastern Conference*

</div>

## CERTIFICATE OF SERVICE (CM/ECF)

I HEREBY CERTIFY that on May 10, 2024, I electronically filed the foregoing DEFENDANTS' REPLY IN SUPPORT OF MOTION TO TRANSFER UNDER 28 U.S.C. § 1404(a) with the Clerk of Court using the CM/ECF system which will send notification of such filing to all counsel of record.

*/s/ Angela C. Zambrano*

Angela C. Zambrano

**14**