UNITED STATES DISTRICT COURT
DISTRICT OF COLORADO

| | |
|---|---|
| ALEX FONTENOT and MYA HOLLINGSHED, Individually and on Behalf of All Those Similarly Situated,<br><br>Plaintiffs,<br><br>vs.<br><br>NATIONAL COLLEGIATE ATHLETIC ASSOCIATION; SOUTHEASTERN CONFERENCE; PAC-12 CONFERENCE; THE BIG TEN CONFERENCE, INC.; THE BIG TWELVE CONFERENCE, INC.; and ATLANTIC COAST CONFERENCE;<br><br>Defendants. | CASE NO. 1:23-CV-03076-CNS-STV<br><br>**Notice of Subsequent Developments Related to Motion to Transfer Under 28 U.S.C. § 1404(a)** |

Plaintiffs respectfully submit this Notice to apprise the Court of recent developments that will likely dispose of Defendants' primary rationale for their transfer motion. *See* ECF No. 90 (transfer motion). Defendants rely on two central reasons to transfer this case to the Northern District of California: the supposed risk of inconsistent rulings, and the supposed risk of overlapping discovery. *See, e.g.*, ECF No. 98 at 2-4. These arguments presumed that another case (the "*Carter*" case),[1] filed 17 days after this one, would proceed and similarly demand fair market pay for college athletes in exchange for services provided. *See id.* The plaintiffs' attorneys in *Carter* are the same as those in another case against the NCAA, known as *House*, that focuses on payments to college athletes for use of their names, images, and likenesses.

Many press accounts report that Defendants' representatives have agreed with the attorneys for *House* and *Carter* on material terms to settle those cases.[2] Defendants are

---

[1] *Carter v. Nat'l Collegiate Athletic Ass'n*, Case No. 3:23-cv-06325 (N.D. Cal.).

[2] Dan Murphy and Pete Thamel, *Looking ahead to this week's House v. NCAA settlement*

1

holding meetings this week to discuss the material terms of the agreement, and media reports reveal that Defendants are expected to vote to approve them. One Defendant, the Big 12 Conference, has reportedly already voted to approve the settlement, and the NCAA has already voted to approve the funding proposal.[3] As one of the plaintiffs' attorneys in *Carter* and *House* stated in an article, "I'm hearing that things are going well in terms of both sides getting ready to approve this."[4] Reports confirm that the parties in those cases have given themselves an internal deadline of May 23 (perhaps coincidentally, the date of the hearing on the motion to transfer in this Court in *Fontenot*) to ratify the material terms. As reported, the parties will then finalize the full settlement agreement and will move for preliminary approval in the Northern District of California.

It is therefore likely that the merits of *House* and *Carter* will never be litigated any further—or at least for the next year or more while the cases go through settlement approval proceedings under Rule 23 in the district court and possibly on appeal. If approved, there will never be any rulings in *Carter* on dispositive motions or discovery motions, and there will never be any discovery in the case either. And if not approved, it

---

*votes*, ESPN (May 20, 2024), https://www.espn.com/college-sports/story/_/id/40182310/looking-ahead-week-house-v-ncaa-settlement-votes; *Docs: NCAA could face $20B in damages, bankruptcy if proposed settlement offer isn't agreed upon*, Ross Dellenger, Yahoo! Sports (May 14, 2024), https://sports.yahoo.com/docs-ncaa-could-face-20b-in-damages-bankruptcy-if-proposed-settlement-offer-isnt-agreed-upon-232315637.html.

[3] Ralph Russo, *Proposed $2.77 billion settlement clears first step of NCAA approval with no change to finance plan*, Associated Press (May 21, 2024), https://apnews.com/article/ncaa-lawsuit-settlement 752156fdb0ea01445f52b1b109d14922.

[4] Ralph Russo, *Attorney says settlement being considered in NCAA antitrust case could withstand future challenges*, AP (May 13, 2024), https://apnews.com/article/ncaa-nil-lawsuit-b4bbf143ac1707ffcd59828add0a2a59.

would likely take at least a year or more for *Carter* to resume given the typical timeline for the process for a settlement of this magnitude. The supposed risk of duplication and inconsistency will be eliminated. With the elimination of those risks, so too goes the rationale for this transfer motion.

What would the proposed settlement of *Carter* and *House* mean for this case? Plaintiffs here await the exact terms of the agreement to fully assess that question, but this case will likely continue to proceed in some way. A reporter recently described a document circulated by Defendant ACC to its leaders that described a number of alarming details about the material terms, including:

- An attempt to release future claims by class members in *House* and *Carter*, and an attempt to release future claims of athletes *not even in college yet* for 10 years through some sort of creative "substitution" system for future college athletes to prevent future antitrust challenges;[5]

- The displacement of one artificial cap on revenue sharing for another artificial cap without going through collective bargaining, with this new anticompetitive cap limited to around $21 million going to athletes per school—no matter how big or small the school's athletic department budget—with the potential to seek credits to that cap based on payments already being made to athletes;[6]

- An attempt to release an estimated $20 billion in potential damages (which assumedly includes the potential damages for the proposed class in

---

[5] Dellenger, *supra* note 2.
[6] Dellenger, *supra* note 2.

3

> *Fontenot*), for around 10 cents on the dollar after the damages payment is reduced to its present value (the damages payment is to be made by the NCAA over 10 years);[7]

- An agreement by the plaintiffs' attorneys in *House* and *Carter* to possibly speak out in favor of antitrust protection for Defendants,[8] or to at least speak out in favor of the supposed procompetitive justifications under antitrust law for the forward-looking relief.[9]

Plaintiffs here will scrutinize the actual terms of any proposed settlement agreement that impacts their own and proposed class members' claims and will continue to advocate for their interests as needed. Given the details that emerged from the ACC's internal document shared with a reporter, it seems likely that one or more of the named plaintiffs here will opt out of any such settlement to continue to litigate their claims in this case. And based on skepticism expressed in press reports, Plaintiffs expect that many other athletes will opt out as well and could seek to join this case to seek better and fairer terms for athletes. While the Northern District of California cases idle into their requested cessation, this case can—and should—move forward in this Court. And it can do so without any concern of inconsistent rulings or duplicative discovery because no discovery or rulings will be taking place in *Carter*.

---

[7] Dellenger, *supra* note 2.

[8] Dellenger, *supra* note 2.

[9] *See* Russo, *supra* note 4 (plaintiffs' attorney in *House* and *Carter* already giving interviews about the supposed procompetitive justifications of a low, artificial cap on spending).

| | |
|---|---|
| DATED: May 21, 2024 | Respectfully submitted,<br><br>By: /s/ *Eric Olson*<br><br>ERIC OLSON<br>eolson@olsongrimsley.com<br>SEAN GRIMSLEY<br>sgrimsley@olsongrimsley.com<br>JASON MURRAY<br>jmurray@olsongrimsley.com<br>ABIGAIL HINCHCLIFF<br>ahinchcliff@olsongrimsley.com<br>**OLSON GRIMSLEY KAWANABE HINCHCLIFF & MURRAY LLC**<br>700 17th Street, Suite 1600<br>Denver, CO 80202<br>Telephone: (303) 535-9151<br><br>STEPHEN M. TILLERY *(*admission forthcoming*)*<br>stillery@koreintillery.com<br>GARRETT R. BROSHUIS<br>gbroshuis@koreintillery.com<br>CAROL O'KEEFE<br>cokeefe@koreintillery.com<br>**KOREIN TILLERY, LLC**<br>505 North 7th Street, Suite 3600<br>St. Louis, MO 63101<br>Telephone: (314) 241-4844<br>Facsimile: (314) 241-3525<br><br>GEORGE A. ZELCS<br>gzelcs@koreintillery.com<br>MARC A. WALLENSTEIN<br>mwallenstein@koreintillery.com<br>**KOREIN TILLERY, LLC**<br>205 N. Michigan Ave., Suite 1950<br>Chicago, IL 60601<br>Telephone: (312) 641-9750<br><br>CHRISTOPHER M. BURKE *(*admission forthcoming*)*<br>cburke@koreintillery.com<br>**KOREIN TILLERY, LLC**<br>707 Broadway, Suite 1410<br>San Diego, CA 92101<br>Telephone: (619) 625-5620<br><br>*Attorneys for Plaintiff* |