UNITED STATES DISTRICT COURT
DISTRICT OF COLORADO

| | |
|---|---|
| ALEX FONTENOT, et al.<br><br>Plaintiffs,<br><br>v.<br><br>NATIONAL COLLEGIATE ATHLETIC ASSOCIATION; SOUTHEASTERN CONFERENCE; PAC-12 CONFERENCE; THE BIG TEN CONFERENCE, INC.; THE BIG TWELVE CONFERENCE, INC.; and ATLANTIC COAST CONFERENCE,<br><br>Defendants. | Case No. 1:23-cv-03076-CNS-STV |

**AMENDED SCHEDULING ORDER**

This case has substantially changed since the Court entered its May 24, 2024 Scheduling Order. *See* ECF No. 106. As discussed further below, the case has expanded from two Plaintiffs to over 300, and Plaintiffs[1] no longer seek class action status in light of the order granting final approval of the settlement in *In re College Athlete NIL Litigation*,

---

1 "Plaintiffs" refers to all named Plaintiffs in the operative Fourth Amended Complaint, ECF No. 163.

Case No. 4:20-cv-03919-CW, (N.D. Cal.) ("*House*").[2] The parties have met and conferred and now provide a proposed amended scheduling order.

## I.  DATE OF SCHEDULING CONFERENCE AND APPEARANCES OF COUNSEL

A status conference was set for this matter on July 22, 2025, at 3:30 pm MST. Sean Grimsley of Olson Grimsley Kawanabe Hinchcliff & Murray LLC, 700 17th Street, Suite 1600, Denver, CO 80202, (303) 535-9151, and Garrett Broshuis of Korein Tillery, LLC, 505 North 7th Street, Suite 3600, St. Louis, MO 63101, (314) 241-4844, attended the conference on behalf of Plaintiffs.

Rakesh Kilaru of Wilkinson Stekloff LLP, 2001 M Street NW, 10th Floor Washington, DC 20036, (202) 847-4017, attended on behalf of Defendant National Collegiate Athletic Association.

Britt Miller of Mayer Brown LLP, 71 South Wacker Drive Chicago, IL 60606, (312) 782-0600 attended on behalf of The Big Ten Conference, Inc.

Kathryn Reilly and Michael Krantz of Wheeler Trigg O'Donnell LLP, 370 17th Street, Suite 4500 Denver, CO 80202-5647, (303) 244-1800, and Amanda Nitto of Robinson Bradshaw & Hinson PA, 600 South Tryon St., Suite 2300, Charlotte, NC 28202 (704) 377-2536, attended on behalf of Defendant Southeastern Conference.

---

[2] On June 6, as part of its final approval of the *House* settlement, the Northern District of California published a list of athletes who had opted out of the *House* settlement. That list includes all Plaintiffs in this case except for three, but Defendants have stipulated that those three Plaintiffs will be treated as if they filed timely requests to opt out of the *House* settlement for purposes of this case.

Penny Reid and Chelsea Priest of Sidley Austin LLP, 2021 McKinney Avenue, Suite 2000 Dallas, TX 75201, (214) 969-3529, and Doug Tumminello of Womble Bond Dickinson (US) LLP, 1601 19th Street, Suite 1000, Denver, CO 80202, (303) 628-9000, attended on behalf of Defendant The Big Twelve Conference, Inc.

Whitty Somvichian of Cooley LLP, 3 Embarcadero Center, 20th Floor San Francisco, CA 94111-4004, (415) 693-2000, attended on behalf of Defendant Pac-12 Conference.

Christopher Yates of Latham & Watkins LLP, 505 Montgomery Street, Suite 2000 San Francisco, CA 94111, (415) 391-0600, attended on behalf of Defendant Atlantic Coast Conference.

## II.    STATEMENT OF JURISDICTION

The Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 (federal question) and 1337 (commerce and antitrust regulation) because this case arises under the federal antitrust laws. *See* 15 U.S.C. §§ 1, 3, 15, 26.

### III. STATEMENT OF CLAIMS AND DEFENSES

#### A. Plaintiffs.

Plaintiffs allege that Defendants have violated federal antitrust laws by limiting competition and engaging in wage fixing with respect to college athlete compensation by, among other things, restricting athletes from monetizing their names, images, and likenesses, and prohibiting member institutions conferences and others from sharing in revenues earned by the athletes. *See* ECF No. 163 ¶¶ 360-3552. Plaintiffs seek treble damages caused by the antitrust violations, along with costs, fees, and injunctive relief. *Id*. at pp 838-839.

#### B. Defendants.

Defendants deny that they have engaged in any wrongdoing or that they are liable under any of Plaintiffs' alleged causes of action. Defendants reserve all available defenses. Defendants expect that evidence gathered in fact discovery will disprove both of Plaintiffs' antitrust claims on their merits. Defendants also expect the facts will demonstrate that Plaintiffs will not be able to prove cognizable relevant markets; that Plaintiffs will fail to establish any anticompetitive effects; and that Plaintiffs did not suffer any injury or damage as a result of the alleged conspiracies or as a result of any actions or omissions of Defendants. At this time, Defendants do not bring counterclaims against Plaintiffs, but Defendants reserve all rights to do so if appropriate in the future. Defendants responded to the Fourth Amended Complaint on July 21, 2025.

Case No. 1:23-cv-03076-CNS-STV   Document 192   filed 07/28/25   USDC Colorado
pg 4 of 20

## IV.  UNDISPUTED FACTS

The following facts are undisputed:

1. Defendants' ordinary operations, including their participation in intercollegiate athletics, affect interstate commerce.

2. Defendant NCAA is an unincorporated association that is governed by its members, which include schools and conferences, and with its functional office in Indianapolis, Indiana.

3. Defendants Southeastern Conference, Pac-12 Conference, The Big Ten Conference, Inc., The Big 12 Conference, Inc., and the Atlantic Coast Conference, are all conferences that are members of Defendant NCAA, and their member schools are also members of Defendant NCAA.

4. The Pac-12 Conference is an unincorporated association in San Ramon, California.

5. The Southeastern Conference is an unincorporated association with its office in Birmingham, Alabama.

6. The Atlantic Coast Conference is an unincorporated association with its office in Charlotte, North Carolina.

7. The Big 12 Conference, Inc., is a nonprofit corporation with its office in Irving, Texas.

8. The Big Ten Conference, Inc., is a nonprofit corporation with its office in Rosemont, Illinois.

9. During all relevant times, Defendant NCAA has had, and continues to have, governance committees with representatives from member schools and conferences, which engage in NCAA rulemaking.

10. During all relevant times, Defendant NCAA has had, and continues to have, a constitution and bylaws that are agreed upon by members pursuant to the relevant NCAA bylaws. As a condition of membership, members must comply with the NCAA's constitution and bylaws.

11. At all relevant times, the NCAA has been divided into three levels: Division I, Division II, and Division III. There are more than 350 Division I schools and approximately 1,100 total NCAA member schools.

## V. COMPUTATION OF DAMAGES

### A. Plaintiffs

Because Plaintiffs have not yet received any discovery, Plaintiffs currently lack the ability to compute damages, but once data is obtained, they will do so by the expert deadline. Plaintiffs are requesting the following categories of relief for Plaintiffs (in additional to declaratory and injunctive relief):

1. A finding that Defendants have violated federal antitrust laws.

2. Compensatory damages for each Plaintiff, including damages to compensate Plaintiffs for what they could have earned on their name, image, and likeness absent Defendants' allegedly unlawful restrictions; and damages to compensate plaintiffs for the portion of revenue that Defendants made that plaintiffs would have shared in absent Defendants' allegedly unlawful restrictions.

3. Treble damages.

4. Judgment against Defendants in an amount to be determined.

5. Litigation costs and reasonable attorneys' fees.

6. Pre- and post-judgment interest as permitted by law.

7. Other damages and relief the Court deems equitable and appropriate.

### B. Defendants

At this point Defendants do not seek damages from Plaintiffs but expressly reserve the right to seek costs and attorneys' fees at a later time. Defendants deny that Plaintiffs

are entitled to recover any damages in this case and will respond to Plaintiffs' attempts to substantiate and calculate their claimed damages at an appropriate time.

## VI. REPORT OF PRECONFERENCE DISCOVERY AND MEETING UNDER FED. R. CIV. P. 26(f)

### A. Date of Rule 26(f) meeting.

The parties conferred about the schedule proposed in this Amended Scheduling Order on June 27, 2025, July 8, 2025, and July 14, 2025, by video conference and also exchanged proposals by email, in several telephone conversations, and in person during the period from July 15, 2025 through July 22, 2025.

### B. Names of each participant and party he/she represented.

Plaintiffs were represented by Sean Grimsley, Eric Olson, Isabel Broer, and Bianca Miyata of Olson Grimsley Kawanabe Hinchcliff & Murray LLC, and Garrett Broshuis, Andrew Ellis, and Steve Berezney of Korein Tillery, LLC.

Rakesh Kilaru and Calanthe Arat participated on behalf of Defendant NCAA.

Anna Rathbun and Krissy McKenna participated on behalf of Defendant Atlantic Coast Conference.

Gina Del Tatto participated on behalf of Defendant The Big 10 Conference, Inc.

Penny Reid and Chelsea Priest participated on behalf of Defendant The Big 12 Conference, Inc.

Ashley Kemper Corkery participated on behalf of Defendant Pac-12 Conference.

Kathryn Reilly, Michael Krantz, Travis Hinman, and Amanda Nitto participated on behalf of Defendant the Southeastern Conference.

7

    **C.**    **Statement of when Rule 26(a)(1) disclosures were made or will be made.**

The parties agreed to amend the time for serving initial disclosures, and the parties did so pursuant to Fed. R. Civ. P. 26(a)(1) as of June 24, 2024. Plaintiffs supplemented their initial disclosures on July 3, 2025.

    **D.**    **Proposed changes, if any, in timing or requirement of disclosures under Fed. R. Civ. P. 26(a)(1).**

See above.

    **E.**    **Statement concerning any agreements to conduct informal discovery.**

The parties have agreed to stipulated protective orders and an ESI protocol. The parties have not yet reached any other informal discovery agreements at this time. The parties will continue to meet and confer over whether and how efficiencies from earlier and related litigation may be achieved.

    **F.**    **Statement concerning any other agreements or procedures to reduce discovery and other litigation costs, including the use of a unified exhibit numbering system.**

The parties are discussing procedures that can be used to reduce discovery and other litigation costs, including the potential use of discovery and discovery agreements from other cases, such as *House* and *Alston*. The parties will make efforts to minimize costs and the burden of discovery by using a unified exhibit numbering system for trial exhibits. The parties will also discuss, and try to reach agreement on, a unified numbering system for deposition exhibits in an effort to ensure duplicate exhibits are not used during different depositions. The parties will also discuss, and try to reach agreement on, a reasonable procedure for the authentication of documents. The parties agree that neither

Plaintiffs nor Defendants are required to retain, collect, or produce text messages in discovery. The parties will also continue to meet and confer over how to efficiently conduct depositions and other discovery to generally reduce litigation costs.

  **G. Statement as to whether the parties anticipate that their claims or defenses will involve extensive electronically stored information, or that a substantial amount of disclosure or discovery will involve information or records maintained in electronic form.**

The parties do envision extensive ESI in this case and have already entered an ESI protocol. (ECF Nos. 126, 128). The parties anticipate using search terms for at least some of the ESI, and they will meet and confer over the appropriate use and scope of search terms, along with relevant custodians. The parties all have counsel experienced in extensive ESI productions and have experience in negotiating ESI protocols suitable for large antitrust cases. The parties agree to act in good faith to facilitate the discovery of all relevant, properly requested, non-privileged, and properly discoverable ESI within the scope of Rule 26(a)(1).

Plaintiffs are aware of document preservation expectations and are taking and will take appropriate steps to ensure the documents and ESI are preserved. Defendants have issued internal litigation hold notices and have taken steps to preserve documents and ESI, including by preserving documents related to previously filed and pending lawsuits related to these same and other similar issues of student-athlete compensation.

  **H. Statement summarizing the parties' discussions regarding the possibilities for promptly settling or resolving the case.**

The parties have considered possibilities for a prompt settlement or resolution of the case by Alternative Dispute Resolution ("ADR") as required by Fed. R. Civ. P. 26(f),

but have not agreed to settle or seek ADR at this time. The parties do not believe that a settlement conference with the Magistrate Judge would be appropriate at this time.

## VII. CONSENT

All parties have not consented to the exercise of jurisdiction of a magistrate judge.

## VIII. DISCOVERY LIMITATIONS

The parties ask that certain discovery limitations be modified to account for the number of parties and the discovery needed in this case. The parties propose the following limitations.

### A. Modifications to the phasing of discovery and trial

Given the number of Plaintiffs involved, the parties propose a phased discovery and trial process for this case. The parties have agreed to a process, described further below, wherein 45 Plaintiffs will be chosen for an initial Plaintiff group (the "Initial Plaintiff Group") that will participate in discovery and proceed to trial. The parties will confer regarding the selection process for these 45 Plaintiffs. The remaining 264 Plaintiffs' cases will be stayed until the conclusion of the Initial Plaintiff Group's cases, and then the parties will confer regarding resolution of the remaining cases.

The parties agree to several principles that will govern the conduct of the litigation as to the Initial Plaintiff Group:

*First*, the outcome of the Initial Plaintiff Group's cases will not have preclusive effects going forward (either collateral estoppel or *res judicata*), whether that is an outcome following trial, as the result of a Rule 56 motion for summary judgment or otherwise.

*Second*, in order for the parties to select the Initial Plaintiff Group, each Plaintiff will complete and serve on Defendants a Plaintiff Fact Sheet ("PFS") in a form to be negotiated and agreed by the parties. The parties agree the PFS will be served by the deadline together with all Name Image and Likeness ("NIL") and scholarship agreements entered into prior to or during their time in college in Plaintiffs' possession, custody, or control following a reasonable search and subject to AEO confidentiality designations. Selection of Plaintiffs for the Initial Plaintiff Group will begin after the deadline for Plaintiffs to return the PFS. If any Plaintiff fails to complete and serve the PFS by the deadline, they will be dismissed from the case with prejudice unless timely cured. The parties have agreed to a cure period and a process for these dismissals, provided below, and Plaintiffs may oppose dismissal of any Plaintiff with good cause for why they did not return a substantially complete PFS.

*Third*, the number of Plaintiffs in the Initial Plaintiff Group will remain at 45 throughout the process. If any Plaintiff in the group is removed from the case, either through settlement, voluntary dismissal, or some other means, the parties will substitute new Plaintiffs into the group following a meet and confer about the selection process.

*Fourth*, at the end of discovery for the Initial Plaintiff Group, the parties agree to confer regarding an efficient trial plan for the 45 Plaintiffs, which may include more than one trial.

In line with these principles, the parties propose the following case schedule:

| Event | Date |
|---|---|
| Parties agree to PFS or submit disputes to Court | August 22, 2025 |
| Defendants serve PFS on all plaintiffs | September 4, 2025 |
| Defendants produce prior case documents (subject to further conferral to resolve redaction issues) | October 31, 2025 |
| Deadline for plaintiffs to return PFS, including production of NIL and scholarship agreements in plaintiffs' custody or control following a reasonable search and subject to AEO confidentiality designation | October 31, 2025 |
| Deadline for parties to serve at least 80% of each of their allotted RFPs, RFAs, and Interrogatories to allow for meet & confer prior to opening of discovery | November 14, 2025 |
| Defendants send notice of noncompliance to Plaintiffs for any that did not return PFS by deadline or that returned inadequate PFS | November 14, 2025 |
| Deadline for parties to confer regarding any noncompliant Plaintiffs, including those that did not complete the full PFS form | November 21, 2025 |
| Deadline for Defendants to file motion to dismiss with prejudice Plaintiffs that did not respond or that did not complete PFS | December 5, 2025 |
| Plaintiffs' opposition to motion to dismiss Plaintiffs that did not respond or that did not complete PFS | December 22, 2025 |
| Defendants' reply in support of motion to dismiss | January 9, 2026 |
| Parties confer and agree to process for choosing Initial Plaintiff Group | January 9, 2026 |
| Potential status conference with Court to resolve issues related to process for choosing Initial Plaintiff Group | Week of January 12, 2026 |
| Finalize Initial Plaintiff Group and submit to the Court | January 30, 2026 |

| Discovery begins on Initial Plaintiff Group | January 30, 2026 |
|---|---|
| Substantial completion of document production | June 19, 2026 |
| Close of fact discovery | October 30, 2026 |
| Plaintiffs' expert disclosures | November 13, 2026 |
| Defendants' rebuttal expert disclosures | January 29, 2027 |
| Plaintiffs' reply expert disclosures | February 26, 2027 |
| Close of expert discovery | April 9, 2027 |
| Deadline for either party seeking to file a motion for summary judgment to email Judge Sweeney's Chambers to inform the Court of their intent to file a motion for summary judgment. | April 19, 2027 |
| Parties to file Status Report regarding settlement discussions. | April 23, 2027 |
| Daubert motions | April 23, 2027 |
| Oppositions to Daubert motions | June 4, 2027 |
| Replies to Daubert motions | June 28, 2027 |
| Mediation deadline | July 2, 2027 |

**B.     Modifications if any party proposed to the presumptive numbers of depositions or interrogatories contained in the Federal Rules.**

*Interrogatories.*

Plaintiffs in the Initial Plaintiff Group collectively may serve up to 25 interrogatories on each Defendant. Defendants collectively may serve up to 25 consolidated interrogatories on each Plaintiff in the Initial Plaintiff Group, including any Plaintiff(s) subsequently added. Once the Initial Plaintiff Group cases conclude, the parties will meet

13

and confer about subsequent discovery related to additional Plaintiffs, but Defendants collectively will be entitled to serve up to 25 consolidated interrogatories on each Plaintiff that goes through the discovery process.

*Depositions*.

Plaintiffs may obtain Rule 30(b)(6) deposition testimony from each Defendant and may collectively take up to 15 additional depositions (except upon agreement of the parties or for good cause shown).

Defendants collectively may depose each Plaintiff in the Initial Plaintiff Group, including any Plaintiff(s) subsequently added, with such depositions lasting no more than 3 hours, absent agreement by the parties or approval from the Court with good cause. In addition, Defendants collectively may take 30 additional depositions (except upon agreement of the parties or for good cause shown) related to the Initial Plaintiff Group.

The parties agree that depositions of experts will not count toward the deposition limits for either Plaintiffs or Defendants.

Once the Initial Plaintiff Group cases conclude, the parties will meet and confer about subsequent discovery related to additional Plaintiffs, but Defendants collectively will be entitled to one deposition of up to 3 hours (except upon agreement of the parties or for good cause shown) for each Plaintiff that goes through the discovery process.

    **C.**    **Limitations which any party proposed on the length of depositions.**

**Undisputed issues**

The parties agree that each deposition will be limited to 1 day of 7 hours, absent leave of the Court with good cause or a specific agreement of the parties, **except** that

Defendants' depositions of any Plaintiff will be limited to 3 hours, except upon agreement of the parties or for good cause shown. The Parties will confer to accommodate remote depositions where it is feasible.

**Plaintiffs' Proposal:** It is premature to set time limits on 30(b)(6) depositions in the abstract without knowing what deposition notices have been served, what the topics at issue are, how many witnesses will be designated as corporate representatives for a particular Defendant, and whether corporate representatives would also be deposed in their individual capacities.

**Defendants' Proposal:** For all 30(b)(6) depositions, including 30(b)(6) depositions of Defendants, the deposition will be limited to 7 hours total, no matter how many topics for the deposition are noticed and no matter how many witnesses are offered for those topics, absent good cause or agreement by the parties. Given that Plaintiffs will receive extensive documents, briefing, and deposition testimony from prior cases, including prior 30(b)(6) testimony, Plaintiffs should not be able to demand that Defendants' provide an unlimited scope of 30(b)(6) testimony without any time restriction.

### D.   Limitations which any party proposes on the number of requests for production and/or requests for admission.

The parties agree that requests for admission issued for purposes of authentication or to establish the admissibility of documents will not count towards the limits on such requests.

The parties agree that Plaintiffs collectively may serve up to 40 consolidated requests for production and 30 consolidated requests for admission on each Defendant.

15

The 21 requests for production that Plaintiffs already served will count against this number.

The parties agree that Defendants collectively may serve up to 25 consolidated requests for production and 25 consolidated requests for admission on each Plaintiff in the Initial Plaintiff Group, including any Plaintiff(s) subsequently added. Once the Initial Plaintiff Group cases conclude, the parties will meet and confer about subsequent discovery related to additional Plaintiffs, but Defendants collectively will be entitled to serve up to 25 requests for production and 25 consolidated requests for admission on each Plaintiff that goes through the discovery process.

E. **Deadline for service of Interrogatories, Requests for Production of Documents and/or Admissions.**

The parties agree that they will serve at least 80% of each of their allotted RFPs, RFAs, and Interrogatories by November 14, 2025.

F. **Other Planning or Discovery Orders.**

The parties filed a proposed ESI protocol, protective order, and deposition protocol on August 12, 2024, which the Court entered. (ECF Nos. 126, 127, 128, 129). The parties will also meet and confer regarding other planning and discovery matters and will submit such other discovery orders to the Court as the need may arise. The parties have discussed, and will continue to discuss, production of certain discovery from prior cases, including the *House* case, subject to appropriate protection for sensitive, competitive information belonging to third parties, including television networks. The parties will continue to meet and confer about implementing measures to protect such information, including maintaining the information under seal as appropriate.

### IX. CASE PLAN AND SCHEDULE

#### A. Deadline for joinder of parties and amendment of pleadings.

The deadline for joinder of parties and amendment of pleadings has passed.

#### B. Discovery cutoff.

The Parties have provided the date for the discovery cutoff in the proposed schedule above.

#### C. Dispositive motion deadline.

The Parties have provided the date for the dispositive motion deadline in the proposed schedule above.

#### D. Expert witness disclosure.

1. **The parties shall identify anticipated fields of expert testimony, if any.**

At this time, Plaintiffs anticipate disclosing expert opinions related to damages, the market and economic impact and lack of procompetitive justifications for Defendants' allegedly unlawful NIL and revenue-sharing restrictions, Defendants' revenues generated by sports Plaintiffs have played, the share of revenue athletes make in a competitive market absent Defendants' allegedly anticompetitive restrictions, money that Plaintiffs and others like them have earned and could have earned absent restrictions on monetizing Plaintiffs' name, image, and likeness, and possibly ethical issues or other subjects that might arise during the course of the litigation.

Defendants anticipate expert testimony to rebut Plaintiffs' expert(s) on merits issues, damages, and any other subject on which Plaintiffs present expert witnesses, and to explain the procompetitive benefits of the rules being challenged in this lawsuit.

2. **Limitations which the parties propose on the use or number of expert witnesses.**

Each side will be limited to no more than seven expert witnesses in total (regardless of the phase), absent leave of the Court or specific agreement from all parties.

3. **The parties shall designate all affirmative experts and provide opposing counsel with all information specified in Fed. R. Civ. P. 26(a)(2) on or before [see competing schedules above].**

The Parties have provided the dates for disclosures of affirmative experts in the proposed schedule above.

4. **The parties shall designate all rebuttal experts and provide opposing counsel with all information specified in Fed. R. Civ. P. 26(a)(2) on or before [see competing schedules above].**

The Parties have provided the date for disclosure of rebuttal experts in the proposed schedule above.

5. **Depositions of all affirmative and rebuttal experts should conclude on or before [see competing schedules above].**

The Parties have provided the date for the cutoff of expert discovery in the proposed schedule above.

E. **Identification of persons to be deposed.**

In addition to obtaining Rule 30(b)(6) testimony from each Defendant, Plaintiffs anticipate deposing individuals who served on relevant NCAA committees. Plaintiffs may also depose other individuals who have relevant information, such as coaches and administrators of NCAA members and third parties, as well as Defendants' experts.

Defendants intend to depose all current named Plaintiffs and any subsequently added named Plaintiffs and Plaintiffs' experts. Defendants may also seek to depose third party individuals and organizations, if needed.

Each party reserves the right to cross-notice any deponent that is noticed by the other party without that counting against the cross-noticing party's limits.

## X. DATES FOR FURTHER CONFERENCES

**A.  Status conferences will be held at the following dates and times:**

Magistrate Judge to insert date and time.

_____, 20\_\_ at \_\_ o'clock \_\_\_m.

**B.  A final pretrial conference will be held at the following date and time:**

Magistrate Judge to insert date and time.

_____, 20\_\_ at \_\_ o'clock \_\_\_m.

## XI. OTHER SCHEDULING MATTERS

**A.  Identify those discovery or scheduling issues, if any, on which counsel after a good faith effort, were unable to reach an agreement.**

The parties have identified the issues on which counsel have not been able to reach agreement despite good faith efforts to do so.

**B.  Anticipated length of trial and whether trial is to the court or jury.**

The parties have agreed to confer regarding the specific trial structure for the Initial Plaintiff Group, including how many trials will be needed and how many Plaintiffs will be grouped together at each trial, and will present a proposal to the Court in advance of the pretrial conference.

**C.  Identify pretrial proceedings, if any, that the parties believe may be more efficiently or economically conducted in the District Court's facilities.**

The parties do not believe any pretrial proceedings may be more efficiently or economically conducted in other District Court facilities.

**XII.   NOTICE TO COUNSEL AND PRO SE PARTIES**

The parties filing motions for extension of time or continuances must comply with D.C.COLO.LCivR 6.1(c) by submitting proof that a copy of the motion has been served upon the moving attorney's client, all attorneys of record, and all pro se parties.

Counsel will be expected to be familiar and to comply with the Pretrial and Trial Procedures or Practice Standards established by the judicial officer presiding over the trial of this case.

With respect to discovery disputes, parties must comply with D.C.COLO.LCivR 7.1(a), the Uniform Civil Practice Standards for Magistrate Judges, and any additional Order of the assigned Magistrate Judge regarding discovery dispute procedures [if any].

Counsel and unrepresented parties are reminded that any change of contact information must be reported and filed with the Court pursuant to the applicable local rule.

**XIII.   AMENDMENTS TO SCHEDULING ORDER**

The scheduling order cannot be altered or amended except upon a showing of good cause.

DATED this __28__ day of __July__, 2025.

BY THE COURT:

_____